**A. E. ADAMS, Appellant,**

v.

**Franklin D. RAMER, Appellee.**

No. 13916.

Court of Civil Appeals of Texas.

San Antonio.

June 6, 1962.

Rehearing Denied July 5, 1962.

Schlesinger, Goodstein & Semaan, San Antonio, for appellant.

LeLaurin, Chamberlin, Guenther & Murry, San Antonio, for appellee.

MURRAY, Chief Justice.

This suit was instituted by A. E. Adams as plaintiff against Franklin D. Ramer as defendant, seeking to recover damages resulting from a collision between an automobile driven by Adams and one driven by Ramer. The collision occurred upon Dwyer Road, which runs north and south between U. S. Highway 90 West and Medina Base in Bexar County, Texas. The Adams' car was being driven in a southerly direction along Dwyer Road, and the Ramer car in a northerly direction along that Road. Adams estimated that his car was being driven between 35 and 45 miles per hour, and Ramer that his car was being driven between 45 and 50 miles per hour. Dwyer Road was about 40 feet wide and was paved, but had no center stripe marked upon it. At the time of the collision Ramer's car was some six feet past the center of the road and on Ramer's wrong side of the road. Adams' car was on its proper side of the road. The cars met almost "left headlight to left headlight," and were considerably damaged. The collision occurred about 10:30 p. m. on November 17, 1955. In answer to special issues, the jury found that Ramer was operating his automobile on the left-hand side of the road, but that such was not negligence; that Ramer was not driving his automobile at a negligent rate of speed; that Ramer failed to keep such control of his automobile as a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances, and that such negligence was a proximate cause of the collision; that he failed to keep such lookout for others as a person of ordinary prudence in the exercise of ordinary care would have kept under the same or similar circumstances, and that such negligence was a proximate cause of the collision. These findings are not challenged in any way and are binding upon us.

The jury further found that Adams did not operate his automobile across the center line of the highway, upon his left-hand side of the road; that he did not operate his automobile at a negligent rate of speed; that Adams did fail to keep such control of his automobile as a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances, and that such negligence was a proximate cause of the collision, and that Adams failed to keep such lookout for others as a person of ordinary prudence in the exercise of ordinary care, would have kept under the same or similar circumstances, and that such negligence was a proximate cause of the collision. Thus the plaintiff, Adams, was found to be guilty of two acts of negligence, that of failure to keep a proper control of his car and to keep a proper lookout, and that each was a proximate cause of the collision.

The trial court rendered judgment that Adams recover nothing from the defendant, Ramer, and that Ramer recover his court costs, from which judgment Adams has prosecuted this appeal.

The question here presented is whether or not there was any evidence to sustain the finding of the jury that appellant, Adams was negligent in not keeping his car under proper control, and in failing to keep a proper lookout. The burden of pleading and proving that Adams did not keep his car under proper control and did not keep a proper lookout was upon Ramer. McDonald v. Skinner, Tex.Civ. App., 347 S.W.2d 950. Negligence is never presumed for the mere happening of an accident. Wells v. Texas Pacific Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660. The mere happening of a collision is not of itself evidence of negligence and of proximate cause. Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195.

It cannot be assumed that the driver of an automobile failed to keep his au-

tomobile under proper control and failed to keep a proper lookout unless there is some evidence of such fact. Groendyke Transport Co. v. Dye, Tex.Civ.App., 259 S.W.2d 747.

There were only two witnesses to this accident—appellant and appellee—the drivers of the two vehicles involved. Appellant described the unexpected presence of lights in front of him and on the wrong side of the road, in this way: "The only reaction I had when I saw the lights coming at me was to get out of the way, if I could, because I knew somebody was in the wrong place and I knew I was on my side of the road and I tried to duck it but I didn't have time." "It looked like it just came over the top and headed right into me. I couldn't see anything but some lights blinding me." "It just happened awful quick." "I didn't have time." The appellee gave an identical version. He testified, "I come up over this little hill and the first thing I saw was the light." His counsel asked him how much time elapsed from the time he first saw appellant's lights to the impact, and appellee answered, "Just like that." He said it was just long enough to blink your eyes. From this, it appears that appellee suddenly appeared on the wrong side of the road and appellant had no time in which to see or to act.

██ The only evidence in this record which could possibly be construed as in any way contradicting the testimony of both the appellant and appellee is that of J. W. Garner, a State Highway Patrolman, who made an investigation at the scene of the accident. The collision happened at 10:30 p. m. on the night of November 17, 1959. Garner received his first call to investigate at 11:00 p. m. He was told the accident occurred at the intersection of Highway 90 West and Dwyer Road. He went to this intersection and found no evidence of a collision. Later he received another call telling him the collision occurred south of the intersection on Dwyer Road. He then went down Dwyer Road and found a place he concluded was the place of the collision. When he arrived, appellant and appellee had left the scene of the accident. He estimated the point of impact to be 80 or 90 yards north of the crest of a high hill. If his estimate was correct, then the autos were some 170 to 180 yards apart when Ramer's car came over the crest of the hill, and thus there might have been time for Adams to have pulled off the highway and avoided the collision. This estimate of the distance made by Garner cannot be used to contradict the testimony of both eye witnesses, to the effect that the collision happened so suddenly that Adams had no time to avoid the collision. There is no evidence in the record to support the jury's answers to Special Issues Nos. 16 and 18, but if the testimony of Garner be regarded as some evidence of Adams' failure to keep a proper control of his car and his failure to keep a proper lookout, then in that event the answers of the jury to these two issues are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

The jury's answer to Special Issue No. 20, to the effect that Adams suffered no damages as a result of the collision is contrary to the evidence. The evidence shows conclusively that he suffered at least some damages as a result of the collision.

The judgment of the trial court is reversed and the cause remanded for a new trial.

BARROW, J., not participating.