**ALLIED FINANCE COMPANY et al.,**
**Appellants,**

**v.**

**J. D. GAMMILL et ux., Appellees.**

**No. 17013.**

Court of Civil Appeals of Texas.

Fort Worth.

April 18, 1969.

Rehearing Denied May 23, 1969.

**898**

Strasburger, Price, Kelton, Martin & Unis, and Patrick F. McGowan, Dallas, for appellants.

Royce Whitten, and William P. Philips, Jr., Denton, for appellees.

## OPINION

RENFRO, Justice.

This is a rear-end collision case. Suit was brought by J. D. Gammill and wife Juanita against Allied Finance Company and its employee-driver Seth Ward Hinshaw for damages sustained by Mrs. Gammill when her car was struck in the rear by a truck driven by Hinshaw.

Mrs. Gammill will be referred to as plaintiff, and Hinshaw as defendant.

Plaintiff had been traveling south on Fort Worth Drive in the City of Denton. She stopped at the intersection of Acme Street and Fort Worth Drive with the intention of making a left turn in order to go east on Acme Street. While stopped her car was struck by defendant's truck.

The jury found: defendant failed to keep a proper lookout, failed to apply his brakes and failed to turn his truck to the right; that each of said acts were a proximate cause of the collision.

Defendant does not question the sufficiency of the evidence to support such findings.

Issue No. 16 inquired of the jury whether "at the time and on the occasion in question Juanita Gammill failed to timely complete her turn on to Acme Street." Issues 17 and 18 were follow-up issues on negligence and proximate cause.

Issues 16, 17 and 18 were not answered by the jury.

Plaintiff objected to the submission of the three issues, and, after the verdict was received by the court, moved for judgment even though the three issues were not answered.

The court entered judgment for plaintiff, the judgment stating in part, "* * * Plaintiffs are entitled to * * * Judgment * * * (affirmative answers to 16, 17, 18) would not have been supported by evidence of probative force, * * *."

No issue was requested or given regarding lookout on the part of plaintiff.

Defendant argues very strongly that a mistrial should have been declared because there was some evidence of probative force to support the submission of the three issues.

Plaintiff testified: on April 20, 1967, about 4:45 P.M. she drove south on Fort Worth Drive in Denton on her way home. It had been raining, but at time of accident was just cloudy. Visibility was good. When she reached Acme where she was to make a left turn she had to stop because of oncoming traffic, that is, traffic coming from the south on Fort Worth Drive and going north. She turned on her left turn indicator. The next thing she knew she was "flying across the highway. * * * There was oncoming traffic and I could not safely make a turn to the left." Her car finally stopped in a vacant lot across the highway. There was sufficient clearance for the defendant to have missed her by turning to the right.

Defendant Hinshaw by deposition testified: at time of accident rain had "Let down to a drizzle. Streets were slippery and wet." He was going south on Highway 377 (Fort Worth Drive). He first saw plaintiff stopped at the intersection when he was 110 or 120 yards north of the intersection. He did not know whether her indicator light was on but assumed she was going to make a left turn. " 'Well, when I first observed Mrs. Gammill in the intersection I also observed that there was no traffic coming toward us, and I was very unfamiliar with the truck I was driving, of course. That day was the first time I had ever driven it. And I'm not a professional truck driver anyway. And I glanced, after seeing her there and not seeing any traffic

coming toward us, I glanced down at my instruments. * * *

" 'Glanced at my instruments on the truck. I remember looking down for some reason. I don't know what I looked at or why, and I had just assumed that she would go ahead and make her turn. And when I looked back up I was about—I saw her again, and the fact that she was still there. I was about fifty yards from her, approximately fifty yards from her car and she was still in the intersection. * * *

" ' * * * there is a slight grade there, slight grade, and a slight curve to the left, and I stopped, hit my brakes and went into a skid, and I attempted to pull around to the right, you know, and miss her, but I had already lost control of the truck.

" 'Question: How far away from Mrs. Gammill were you when you noticed her after you glanced from your instruments?

" 'Answer: I said approximately fifty yards the second time I observed her.

" 'Question: Fifty yards, and she was still stopped there?

" 'Answer: Yes.

" 'Question: And you continued to go forward?

" 'Answer: No, I started stopping right there.

" 'Question: But you couldn't stop in the fifty-yard—in the approximate fifty-yard time?

" 'Answer: I'd say—

" 'Question: Fifty yard distance, excuse me.

" 'Answer: No, not under the conditions. My truck—

" 'Question: About what was your speed then?

" 'Answer: Twenty-five to thirty miles an hour. I wasn't speeding. * * *

" 'Question: If you had used the proper lookout this collision wouldn't have occurred, would it?

" 'Answer: Well, under the conditions I don't know.

" 'Question: All right. You certainly don't think it's her fault, do you?

" 'Answer: No, I don't say that it was. * * * first time I observed her car stopping in the intersection, * * * there was no traffic coming toward us.' " First thing he did after observing her the second time was to hit his brakes, the truck went into a skid and he lost control. His left bumper hit her right rear fender. At time of impact he was traveling 15 miles per hour.

As a witness at the trial Hinshaw testified: Highway 377 was in 1967 the main road from Denton to Fort Worth. He was 150 yards back when he first saw plaintiff's car. The road was wet. Plaintiff was stopped at the intersection. He assumed she was going to make a left hand turn. Highway 377 curves to the left and there is a slight grade south of Acme. On the left hand side of the highway, toward Fort Worth, there are several trees. The trees had leafed-out. A person sitting at the intersection could see further south on the highway than a person coming from under an overpass 150 yards north of the intersection could see. Plaintiff could undoubtedly see approaching traffic from the south that defendant could not see when he was 150 yards back of her. At a distance of 150 yards from plaintiff he looked at the truck instrument panel and did not look up again until he was within 50 yards of plaintiff. He attempted to go to her right but failed. For approximately 100 yards he did not look at the road. He knew plaintiff was still at the intersection the second time he looked. In answer to the question, "And it was just a bad drive on your part, and you were very happy that she wasn't killed; isn't that correct?", he answered, "That is correct."

He was asked, "Were there any cars coming toward her to keep her from turning?", to which he answered, "Not the first time I looked, no", and "when you looked up the second time, then, were there any cars coming toward her that would have kept her from turning?", he answered, "I was too busy stopping, trying to stop."

When he applied the brakes, "I went into a skid and lost control of it", and was unable to guide it.

Pictures introduced in evidence show a quite discernable curve or turn in Highway 377 to the south of Acme Street.

W. K. Mulkey, patrolman for City of Denton, testified: the point of impact was near the center line but on the west side of the center line in the center of Fort Worth Drive. Plaintiff's car came to rest 155 feet from point of contact. A person coming from the underpass (150 yards) north of Acme Street would find it hard to determine whether or not traffic was approaching Acme Street from the south because the road curves "down there." A person at the intersection could not see all the way down 377 to the south but "sure could" see traffic to the south better than one could back 150 yards north of Acme. The curve in 377 starts soon after it crosses Acme. Defendant told witness he was driving 30 miles per hour.

■ The failure of the jury to answer issues the defendant is entitled to have affirmatively submitted precludes the rendition of a judgment for a plaintiff. 3 McDonald, Texas Civil Practice, § 15.03, page 1264; Texas Employers' Ins. Ass'n v. Horn, 75 S.W.2d 301 (Tex.Civ.App., 1934, no writ hist.).

The question before us is whether, under the evidence, defendant was entitled to have No. 15 affirmatively submitted as a material issue.

■ To determine whether a jury question is raised on a particular issue the evidence must be viewed in the light most favorable to the complaining party, all contrary evidence disregarded and every legitimate inference indulged in favor of the issue. 57 Tex.Jur.2d, p. 94, § 453.

■ Article 6701d, § 93(a), Vernon's Ann.Tex.Civ.St., pertaining to stopping, or parking upon the main-traveled part of the highway, and cases based thereon and cited by defendant are not applicable to the present case, for in the instant case the evidence is undisputed that plaintiff was in the proper lane for a left hand turn and had on her left turn indicator. It certainly would not have been "practical" for her "to stop, park, or so leave vehicle off such part of said highway * * *." It would have been impractical and probably illegal for her to have made a left turn at the place in question in any other manner than the way she was attempting to make the left hand turn.

We have set out defendant's testimony in considerable detail. Without repeating it, we call attention to all his testimony as summarized. Taking into consideration the physical surroundings and the undisputed facts, in connection with defendant's testimony, his testimony as to oncoming traffic can mean nothing more than that as he emerged from the underpass 150 yards north of Acme he did not see oncoming traffic on Highway 377 south of Acme. He freely admitted plaintiff was in better position to see oncoming traffic than he, and he freely admitted he did not look ahead again until he was within 50 yards of the intersection, and then he did not look to see if traffic was approaching from the south. Defendant Hinshaw never tried to shift blame for the accident to plaintiff. For example he testified, " * * * I don't say that it was" her fault, and "That is correct" to the question if it was just a bad drive on his part that caused the accident.

■ The evidence adduced is not sufficient to convict plaintiff of contributory negligence. It was defendant's burden to prove contributory negligence. Le Master

v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224 (1942); Adams v. Ramer, 358 S.W.2d 638 (Tex.Civ.App., 1962, ref., n. r. e.).

The evidence is such that reasonable minds cannot differ as to the effect of defendant's testimony, and the necessary conclusion is that defendant failed to present any evidence of probative force that plaintiff was guilty of negligence in making her left turn.

■■■ When only one reasonable inference can be drawn the question of negligence becomes one of law. As a matter of law defendant failed to present evidence of probative value that plaintiff was guilty of contributory negligence. A mere scintilla of evidence does not require submission of an issue to the jury.

Issues 16, 17 and 18 should not have been submitted to the jury because of no evidence of probative force in support thereof. The court did not err in disregarding the issues.

■■■ In Issue 14, the damage issue, the jury was asked: "What sum of money, if any, * * * do you find * * * would fairly and reasonably compensate Plaintiff, * * * for her personal injuries, * * * directly and proximately caused by the collision in question?"

The jury found plaintiff, Juanita Gammill, was entitled to $16,000.00. The jury was instructed it could consider the following elements: (1) Past physical pain and mental suffering, (2) future physical pain and mental suffering, (3) diminished earning power to date of trial and diminished earning power she will in reasonable probability suffer in the future.

Defendant objected to inclusion of item (3). He argues there was no evidence based on reasonable medical probability that plaintiff will suffer any diminished capacity to labor and earn money in the future.

Plaintiff went to the hospital in an ambulance, where she was attended by Dr. Tatum. She went home that day. About the middle of the night she started hurting —severe pain in neck, head, left leg and left arm. Next morning she was admitted to the hospital. She was x-rayed, set up in traction and given medication for severe nausea. Was in hospital 9 days. Was in cervical traction. Received Darvon, Butazolidin, Robaxin and physical therapy treatments. Since accident has good days and bad. Some days are real bad—severe headaches, neck pains, numbness in arm, hand, leg. Was out of work four months. She is still on medication. Since returning to work has missed as many as three days a month because of pain. Is handicapped in her work as emergency nurse at the hospital because she is not able to lift patients as before, cannot do reaching above head. Cannot do stooping and bending as before— such activity causes severe pain and pulling in the neck and starts headache. She must do some stooping and bending although "it hurts a heck of a lot." Because of the pain she is real nervous and gets upset easily. On "bad" days she hurts particularly in neck and back of head. She sometimes wears a neck brace prescribed by Dr. McAdams. She still uses a traction apparatus at home and sometimes sleeps in it all night. She cannot do housework as before. Never had back or neck trouble before the accident. Health was good before accident. At times she cannot sleep because of the pain.

J. D. Gammill testified his wife, since the accident, has pain and at times cannot sleep at night. She cannot work like she did before. The children do more of the housework.

Dr. J. D. Tatum testified: he saw plaintiff in the emergency room at the hospital immediately after the accident of April 20. She went on home but returned the next day and was placed in the hospital for a period of 9 days. She had a whiplash injury—a severe whiplash—"the most severe whiplash that I have ever seen in my prac-

tice." The blow to her car "would be quite a sufficient act to cause what she has." Plaintiff lost the normal curvature of her cervical spine because she had muscle spasm from the injury received. The injuries sustained by plaintiff were reasonably calculated to cause severe pain and suffering. A fractured vertebra causes less pain and less disability than a whiplash injury. The witness testified to some extent about the injury, reasons for pain, soreness, etc. He was asked, "Do you feel like her injury now is of a permanent nature?" His answer, "I think this woman will probably have intermittent disability for quite some time", then, "Is it reasonably probable that she would have it the rest of her life?", answer, "Reasonably possible." No one can predict to a "moral" certainty. "There is no way of forecasting how much she will have for how long, but I think she will certainly have intermittent episodes of pain and disability from her injuries." In her condition she can have a flare up without provocation. Plaintiff has been off work intermittently because of her discomfort. She will have intermittent periods of disability and will be unable to work at her job.

The jury heard plaintiff relate in minute detail the pain and suffering she has sustained from the time of the accident to the date of trial. The jury heard the only doctor witness testify that in his opinion plaintiff will certainly have intermittent episodes of pain and disability from her injuries, and that the injuries were caused by the blow received in the accident.

The jury was entitled to conclude as to the probable diminished capacity of plaintiff to labor and earn money in the future based upon all the evidence in the case. Insurance Company of North America v. Kneten, Tex., 440 S.W.2d 52; McElroy v. Luster, 254 S.W.2d 893 (Tex.Civ.App., 1953, writ ref.).

Judgment affirmed.