DON ROUNSAVILLE ET UX V. H. B. BULLARD ET UX

No. A-5002. Decided March 9, 1955.
Rehearing overruled April 13, 1955.
(276 S.W. 2d Series 791)

---

1.—Padfield v. McIntosh, 267 S.W. 2d 224.

*James Harvey,* of Archer City, *Strasburger, Price, Kelton, Miller & Martin, Herbert Price* and *Royal H. Brin, Jr.,* of Dallas for petitioners.

*Allen, Crampton, Johnson & Purcell* and *Roger W. Crampton,* all of Wichita Falls, for respondent.

MR. JUSTICE SMITH delivered the opinion of the Court.

Respondents brought this suit to recover damages for the death of their son, Eual Ray Bullard, who was killed instantly in a motor scooter-automobile collision on July 16, 1953. The deceased was riding the motor scooter and Mrs. Rounsaville was driving the automobile at the time of the accident. We shall refer to the parties by their trial court designations.

Plaintiff's petition contained the following allegations:

"H. B. Bullard and wife, Stella Bullard, would show the Court that on the 16th day of July, 1953, that Eual Ray Bullard was riding his motor scooter. That about 11:00 A.M. on the 16th day of July, 1953, he was riding on said motor scooter going south on Texas State Highway No. 79 approximately eight (8) miles north of Archer City, in Archer County, Texas. That this child was riding said motor scooter on the paved portion of the highway on his side, which would be the west side of said highway; as the Defendants' '88' Oldsmobile, driven by Defendant, Sue Wilson Rounsaville, approached from the rear, he was driving his motor scooter on the right hand side of said highway and that he left clear and unobstructed a large paved portion of this wide state highway for the car approaching from the rear to pass without injury to anyone. That this child had a right to be upon said highway on his motor scooter and had the right to continue on the paved portion of said highway. That Defendant, Sue Wilson Rounsaville, could have driven her automobile around 15-year-old Eual Ray Bullard and his motor scooter without danger or damage to anyone. That the Defendant, Sue Wilson Rounsaville, through her negligence, as will be hereinafter more fully set out, did not pull to the left as was her duty, in sufficient time to pass said Eual Ray Bullard as he rode his motor scooter toward his home some mile or two south where his father, the said H. B. Bullard, was a pumper on the Cox Drilling Company lease. That she continued to drive her Oldsmobile automobile and followed this child and violently collided with the motor scooter on which this child was riding, causing instant death to Eual Ray Bullard, as will be hereinafter more fully set out."

The petition alleged several acts of negligence on the part of the defendants and that each and every act of negligence was a proximate cause of the collision and resulting death of Eual Ray Bullard. At the close of all the evidence the defendants presented the following motion for instructed verdict:

"1. There is in the record no evidence at all of any act of negligence on the part of the defendant, Sue Rounsaville.

"2. There is in the record no evidence at all of any act on the part of the defendant, Sue Rounsaville, as being a proximate cause of the collision in question.

"3. The undisputed evidence in the record is that the defendant, Sue Rounsaville, was at the time in question engaged in

attempting to pass Eual Ray Bullard and was properly travelling on the left hand side of the highway in such effort.

"4. The undisputed evidence in the record is that Eual Ray Bullard turned his motor scooter to the left abruptly and collided with the right front corner of the automobile being driven by the defendant, Sue Rounsaville.

"5. There is no evidence in the record whatever of any theory of recovery against these defendants."

The trial court granted such motion and instructed the jury to return a verdict for defendants. Judgment was entered accordingly. The Court of Civil Appeals reversed the action of the trial court and remanded the case to that court for a new trial. 272 S.W. 2d 638.

The plaintiffs predicated their appeal upon an assignment of error to the effect that having established a prima facie case which was not met or overcome by defandants, the trial court erred in sustaining defendants' motion for instructed verdict.

The accident happened about 11:00 o'clock in the morning of July 16, 1953; the highway was wet and slippery; the motor scooter and automobile were traveling south at the time of the impact. Mr. Cooper, a member of the Texas Highway Patrol, testified that he arrived at the scene of the accident at approximately 11:42; that he made a complete investigation; that the point of impact was at a distance of 155 feet and 9 inches south of a bridge; that skid marks ran from about the south end of the bridge to the point of impact; the point of impact was 4 feet and 7 inches from the center stripe on the left side of the road; that the pavement was 18 feet wide; that at the point of impact the right front tire mark of the automobile was 4 feet and 7 inches to the left of the center stripe; that the left front wheel was over the shoulder off the pavement and on the dirt; that "the skid marks started at an angle just past this guard rail where the bridge and the asphalt join together," and followed on down on the left hand side of the pavement to the point of impact.

The defendant, the only living witness to the accident, testified that there was but one impact; that she was not certain as to the distance south of the bridge; that she turned her car to the left side of the road to pass the motor scooter and as the front of the "car got even with his motor scooter, he turned over to me." In answer to the question, "and then tell the jury

what happened?", Mrs. Rounsaville answered: "Well, as we came off the bridge we got a little this side of the bridge and abruptly he started skidding over into me. I suppose he was in a skid. He came over abruptly, and I pulled my left wheels off of the pavement in order to get away from him, but he kept coming and I slammed on the brakes and honked the horn, and he appeared to be out of control. He kept coming at me."

The evidence in this case conclusively established the fact that the deceased was on his own right hand side of the highway when the defendant attempted to pass him and that the defendant was in the left lane of the highway, and just as she was passing, or about to pass, the motor scooter, the deceased, without warning, made a sudden left turn across the center of the highway, and the motor scooter struck the right front fender of the defendant's automobile.

■ There is no eivdence of probative force to justify a finding of negligence against the defendants. The plaintiffs advance the theory that two collisions were involved. We quote the following statement from their brief in the Court of Civil Appeals:

"Defendants' driver approached the deceased boy from the rear at an excessive rate of speed, while not maintaining a proper lookout, and while not having her vehicle under proper control. While the deceased boy was on his own side of the road, Defendants' driver struck the boy's motor scooter on the rear end and knocked the motor scooter on down the road at least partially out of control. Defendants' driver then applied her brakes and turned to the left and her automobile then skidded abreast of the boy's scooter. The out of control scooter collided with the right front side of Defendants' automobile and killed the boy driving the motor scooter.

"Under this theory of liability the only inference necessary from the proven evidence to establish liability in this case is the inference that Defendants' automobile struck the boy's scooter on the rear end while approaching it from the rear with sufficient force to knock the motor scooter out of control."

The evidence does not support this contention. There is no evidence that the automobile struck the motor scooter prior to the impact which occurred 155 feet and 9 inches south of the bridge. Plaintiffs contend that the fact that the skid marks began at the bridge proves that the automobile contacted the motor scooter at that point. Plaintiffs assume that the defendants testified that the point of impact was actually about the place

where the skid marks began. As above pointed out, the defendants did not testify that there were two contacts of the machines. The evidence shows only one collision and the highway patrolman definitely fixed the point of impact at a distance of 155 feet and 9 inches south of the bridge. The fact that the skid marks began at the point where the south end of the bridge and the asphalt joined cannot furnish a basis for a presumption that the defendants' automobile struck the rear of the motor scooter at that point or at any point between the bridge and the point where the evidence conclusively shows the collision occurred. It was held in the case of Ft. Worth Belt Ry. Co. v. Jones, 106 Texas 345, 166 S.W. 1130, 1132, that "a presumption of fact cannot rest upon a fact presumed. The fact relied upon to support the presumption must be proved. 'No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must be established by direct evidence, as if they were the facts in issue. One presumption cannot be based upon another presumption.' 16 Cyc. 1051; Missouri Pac. Ry. Co. v. Porter, 73 Texas 304, 307, 11 S.W. 324." See also Texas & N. O. R. Co. v. Brannon, 140 Texas 52, 166 S.W. 2d 112; Wells v. Texas Pac. Coal & Oil Co., 140 Texas 2, 164 S.W. 2d 660.

The evidence in this case at best raises a mere surmise or suspicion that the accident occurred as claimed by the plaintiffs. If the circumstances are such that reasonable minds might draw different conclusions as to the issue involved, then such issue should be submitted to the jury. "* * * * it is the duty of the trial court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence' * * *." Joske v. Irvine, 91 Texas 574. 44 S.W. 1059, 1063; Austin v. Neiman, Texas Com. App., 14 S.W. 2d 794.

■ Since we have held that the evidence in our case amounts to no evidence, it follows that the trial court properly granted defendants' motion for instructed verdict.

■ We have examined plaintiffs' brief and find that the Court of Civil Appeals did not pass upon an assignment of error to the effect that the trial court erred in failing to grant a new trial on the ground of newly discovered evidence of defendants' negligence. The affidavit of Mr. E. W. Wright, which was attached to the motion for new trial, reflects that the witness did

not see the accident; that he met the deceased at a point 250 or 300 yards north of the bridge; that he recognized the deceased and waved to him; that at that time the boy was not weaving his scooter. The evidence contained in the affidavit could not have been of any material aid to the jury in determining the negligence or lack of negligence of either of the parties involved in the accident. The assignment is overruled.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion delivered March 9, 1955.

Rehearing overruled April 13, 1955.