LEATHERWOOD DRILLING COMPANY, Appellant,

v.

TXL OIL CORPORATION, Appellee.

No. 16331.

Court of Civil Appeals of Texas.

Dallas.

April 17, 1964.

Rehearing Denied May 15, 1964.

Johnson, Guthrie, White & Stanfield and Robert M. Greenberg, Dallas, for appellant.

Bailey & Williams, James A. Williams, Dallas, for appellee.

DIXON, Chief Justice.

Leatherwood Drilling Company, hereinafter referred to as Leatherwood, sued TXL Oil Corporation, hereinafter referred to as TXL, for the sum of $52,620 for damage to a drilling rig resulting from an oil well fire. The petition recited that Firemen's Fund Insurance Company had paid to Leatherwood the sum of $52,620 as insurance covering Leatherwood's loss, that the insurance company was the real party in interest and had been authorized in writing to bring suit in the name of Leatherwood.

A jury returned a verdict in which special issues were answered in favor of defendant TXL, appellee in this appeal, either as to negligence or proximate cause. The jury found that the fire was the result of an unavoidable accident.

Leatherwood, pursuant to contract with TXL had drilled an oil well for TXL on a lease owned by TXL in Reeves County, Texas. On December 1, 1958 the drilling had reached the contract depth of about 2700 feet. The actual drilling activities then ceased and cementing and perforating operations were performed by service companies brought in by TXL. The casing at the bottom of the well was perforated to enable the oil to seep from the rock or sand into the casing.

Then B J Well Service was brought in by TXL to acidize and sand fracture the well. These are processes whose purpose is to break down, or loosen the earthen formation at the bottom of the well so that the oil may more freely escape to the perforated casing.

Ralph Skinner and two other men, employees of B J Well Service, arrived at the site in mid-afternoon of December 1,

1958. However, delays occurred with the result that they could not start their acidizing operation until 8:50 o'clock that evening. They put 500 gallons of acid down the hole, then subjected the acid to 3000 pounds of pressure. Skinner testified that the pressure thereafter went down to 1400 pounds, indicating that the acid was breaking down the formation at the bottom of the well. However, when he tried to build the pressure up to 1600 pounds he observed that a leak had developed in the assembly of pipes and valves at the head of the casing. This assembly is known in the oil business as a "Christmas tree." Upon making this discovery Skinner notified Carl Cheatwood, superintendent in charge for TXL. It was ascertained that the packing around an O-ring seal, part of the "Christmas tree," was defective. Cheatwood ordered the acidizing operation to be discontinued until the leak could be remedied. Efforts to do so were unsuccessful.

McEvoy Company, manufacturer of "Christmas trees," was then asked for help, and sent its representative, W. A. McPherson. McPherson was unable to stop the leak and determined that new packing was necessary. The new packing had to be shipped or flown from Houston, Texas, so another delay resulted. The acidizing process had been discontinued at about 9:30 o'clock the evening of December 1, 1958 and was not resumed until three or four days later after the new packing had been installed.

Meantime the electric lights were left burning, the valves on the "Christmas tree" were left open and the motors were left running. No flow line was attached to the "Christmas tree" to enable the leaking oil to be carried off a distance from the casing head.

About 5:00 o'clock A.M. on December 2, 1958 an explosion was heard and the fire broke out. The flames were coming from beneath the floor of the rig. This floor was about nine feet from the ground. The "Christmas tree" and the casing head

were at ground level beneath the floor. In about two hours the flames were extinguished, but the drilling rig had been damaged to the amount of $52,620.

Leatherwood and Firemen's Fund Insurance Company sued TXL, alleging among other things that Cheatwood, TXL's superintendent, had been negligent in ordering the lights to be left on, the motors to be left running, the valves to be left open, and in failing to attach a flow line to take the leaking oil away from the casing head. In answering thirty issues the jury found either that each of the acts inquired about was not negligence, or if negligence, said negligence was not a proximate cause of the fire.

## OPINION

■■ Appellant's first six points on appeal complain of the court's refusal to submit six requested special issues for determination by the jury. If there was any evidence of probative value to support an affirmative answer to these issues it was the court's duty to submit them. Except as to immaterial issues the court may refuse to submit requested issues only when there is *no evidence* to support an affirmative answer. See In re King's Estate, 150 Tex. 662, 244 S.W.2d 660; Wood v. American Security Life Ins. Co., Tex.Civ.App., 304 S. W.2d 559, 565 (authorities cited in concurring opinion); and article by Chief Justice Robert W. Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," 38 Tex.Law Review, 361, 362.

Appellant has not pointed out any specific evidence in the record which would support the submission of the issues. Appellee insists that the reason appellant has failed to pinpoint any such evidence is that there is none. There are 709 pages of testimony in the record plus numerous documentary exhibits. Our Supreme Court has said that it is not our duty to make an independent search through a voluminous statement of facts to find evidence pertinent to an issue raised by a party. Saldana v. Garcia, 155

Tex. 242, 285 S.W.2d 197; Rule 418, Texas Rules of Civil Procedure.

Nevertheless, we have read the entire statement of facts and have concluded that it was not error for the court to refuse appellant's requested issues.

■ The first two requested issues would have inquired of the jury whether (1) the failure of Cheatwood, TXL's superintendent, to inspect the equipment and the rig in question to determine if all safety precautions had been taken to prevent fire was negligence; and (2) whether such negligence was a proximate cause of the fire. We think that the undisputed evidence shows that Cheatwood did inspect the properties before the fire. But if we should be in error in that conclusion we must still hold that the first issue should not have been submitted, for by its wording it presumes that Cheatwood failed to inspect the properties before the fire, a fact question which should have been submitted in a separate issue.

■ But there is still another cogent reason why the two issues should not have been submitted. It is undisputed that Cheatwood knew of the conditions present prior to the fire. He was on the scene when the leak developed around the packing in the "Christmas tree." It was he who supervised the first attempt to mend the leak and who sent for McPherson, the factory's representative. When it was ascertained that a new packing would be necessary, it was Cheatwood who ordered the acidizing operation to cease, and it was Cheatwood who ordered the lights to be left burning, the motor to be kept running, the valves to be left open and who directed that no flow line be attached. In short, Cheatwood was well informed as to every condition around the well. He knew all that he could have determined by an inspection. Therefore if appellant should be correct in saying Cheatwood failed to inspect, such failure could not be negligence, certainly could not be a proximate cause of the fire. Kenny v. El

Paso Electric Co., Tex.Civ.App., 371 S.W. 2d 777. Appellant's first two points are overruled.

In its third and fourth points appellant complains of the court's refusal to submit issues inquiring (3) whether the failure of Cheatwood to require the rig floor to be cleaned after notice that oil and gas had accumulated thereon, was negligence, and (4) whether such negligence was a proximate cause of the fire. The evidence shows that oil dripped onto the rig floor from the tubing that was withdrawn from the hole pending the stopping of the leak. But we find no evidence that said oil drippings caused the fire. The flame was spurting from the casing head located several feet underneath the rig floor. The oil on the floor may have added somewhat to the intensity of the blaze after the floor caught on fire from below, but that is not evidence that the oil drippings on the floor caused the fire. Appellant's third and fourth points are overruled.

In its fifth and sixth points appellant complains of the court's failure to submit issues inquiring (5) whether the failure of Cheatwood to cause the motors to be turned off was negligence and (6) whether such negligence was a proximate cause of the fire. Again we find no evidence to support the submission of the issues. There is evidence that sparks *could* have come from the motors and *could* have caused the fire. But this is nothing more than speculation. There was also evidence that the fire could have been caused by a lighted match carelessly dropped, or a burning cigarette thrown to the ground. Evidence that a happening is possible cannot be accepted as evidence that it did happen. Negligence and proximate cause cannot be established by mere conjecture or guess. Texas City Terminal Co. v. McLemore, Tex.Civ.App., 225 S.W.2d 1007; Missouri-Pacific R. Co. v. Waugh, Tex.Civ.App., 74 S.W.2d 554, 556. Neither negligence nor proximate cause will be presumed. They must be proved. McCormick and Ray,

"Texas Law of Evidence," Sec. 106, Vol. 1, p. 143. Appellant's fifth and sixth points are overruled.

In its seventh point appellant says that it was error for the court to submit issue No. 30, to which the jury answered that the fire was the result of an unavoidable accident. Appellee plead unavoidable accident as a defense.

It is now well settled that an issue of unavoidable accident must find some support in the evidence to authorize its submission. Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407; Hicks v. Brown, 136 Tex. 399, 151 S.W.2d 790. Ordinarily the issue should not be submitted in a case involving a two-party accident where there is no evidence in the record that something other than acts of the two parties, such as a condition, caused the accident. Strauss v. LaMark, Tex., 366 S.W.2d 555; Harrison v. King, Tex.Civ.App., 296 S.W.2d 344; McCarthy Oil & Gas Corp. v. Cunningham, Tex.Civ. App., 255 S.W.2d 368; Coca-Cola Bottling Co. v. Krueger, Tex.Civ.App., 239 S.W.2d 669; Good v. Born, Tex.Civ.App., 197 S.W. 2d 589; Collins v. Smith, supra; St. Louis & S. W. Ry. Co. of Texas v. Lowry, Tex. Civ.App., 119 S.W.2d 130; Dallas Ry. & Terminal Co. v. Darden (Comm.App.), 38 S.W.2d 777.

But if there is evidence that some extraneous condition caused the accident which condition is not attributable to the parties to the accident, the issue of unavoidable accident should be submitted. Luvual v. Henke & Pillot, Tex.Civ.App., 366 S.W. 2d 831; Blasberg v. Cockerell, Tex.Civ. App., 254 S.W.2d 1012; Fleming's Fraternal Undertaking Co. v. Quarrels, Tex.Civ. App., 116 S.W.2d 1160; Orange & N. W. Ry. Co. v. Harris, 127 Tex. 13, 89 S.W.2d 973; Greer v. Thaman (Comm.App.), 55 S.W.2d 519; Texas & Pacific Ry. v. Edwards (Comm.App.), 36 S.W.2d 477.

It is our opinion that the evidence in this case raised the question of unavoidable accident. It is undisputed that an explosion

took place at about 5:00 o'clock in the morning. The fire followed. There was evidence that a "blowout" occurred, in other words, the pressure in the well built up to the point where it burst its bounds though the valves and the casing were open. Also there was evidence that the packing in the "Christmas tree" was defective. Neither of the litigants had manufactured the "Christmas tree" or its packing or had caused the defect in the packing so far as the evidence shows.

In any event, we cannot say that it could have made any difference in the outcome of the lawsuit if the court had sustained appellant's objections and had refused to submit the issue on unavoidable accident. As we have stated, the jury answered the other issues either that a particular act inquired about was not negligence, or that the negligence, if found, was not a proximate cause of the fire. Such being the situation appellant was not entitled to recover even if there had been no finding of unavoidable accident. Appellant's seventh point is overruled.

 Appellant's eighth and last point charges that the court erred in commenting on what appellee had established in cross examination of appellant's witness Ralph Skinner, because said comment prejudiced the jury's mind and took from them their function as fact finders.

Skinner was the representative of B J Well Service. He was in charge of the three-man crew which attempted to acidize the oil well. He testified that Carl Cheatwood, TXL's superintendent, was in charge of operations at the well. He testified that if the man in charge, Cheatwood, told him to go ahead with a dangerous operation, though he, Skinner, considered conditions dangerous, he would do what he was told to do. However, he then testified that he would talk to the man in charge in an effort to persuade him to stop the operation.

We quote from the testimony:

"Question (By Mr. Williams): Mr. Skinner, suppose or assume the situation I gave you, where there is a dangerous condition that you know of existing that has to do with your operation that you are carrying out, and you know it is dangerous to yourself, your men and your equipment, would you just ask the owner's man, 'Do you want me to go ahead?' or would you tell him that you thought it was dangerous?

\* \* \* \* \* \*

"Answer: You would advise him that you thought it was dangerous.

"Question (By Mr. Williams) You would sit down and talk it over, wouldn't you, or stand there and talk it over?

"Answer: You would shut your pump down and talk to him about it.

"Question: All right, sir. You would try to persuade him to let you do it the safe way, wouldn't you?

"Answer: Sometimes you can't do that.

"Question: Well, you would try to, wouldn't you, Mr. Skinner?

"Answer: I would give my opinion.

"Question: All right, and you would make it very evident to him that that was your opinion, wouldn't you?

"*MR. GREENBERG: Your Honor, I object, it is repetitious, he just answered the question.*

"*THE COURT: Yes, I think you have established that, haven't you? Haven't you gone far enough with this line of questioning?*

"*MR. WILLIAMS: If we have established it in the Court's mind, we are satisfied.*

*"THE COURT: I am not commenting on the evidence, I am just saying— that is for the jury now to establish— to pass upon the facts.*

*"MR. JOHNSON: We would like a bill, Your Honor, on the comment on the evidence; we would like a full bill on that, if the Court please.*

*"THE COURT: All right.*

"MR. JOHNSON: Invading the province of the jury, and we object to Mr. Williams' statement about what he has established in Your Honor's mind.

"THE COURT: No, I will have to sustain the objection to that and told him the jury passes on that, don't you see.

*"MR. JOHNSON: And ask Your Honor to instruct the jury to disregard the inflammatory remarks.*

*"THE COURT: I think they already understand that when I told them they pass upon the facts, I don't—".* (Emphasis ours.)

It is evident that the court was in error in his remarks. They were a comment on the weight of the evidence. Even when asked to instruct the jury to disregard the remarks the court did not do so, but instead stated that he thought the jury understood when he told them they pass upon the facts.

Though it was error we are convinced it was harmless error and should not result in a reversal of the judgment. The witness had stated several times that if he were faced with a dangerous condition he would talk to the man in charge about it. The questions and answers had become repetitive and the last question was objected to on that ground. Instead of simply sustaining the objection, the court said, "Yes, I think you have established that, haven't you? Haven't you gone far enough with this line of questioning?" Apparently the court merely meant to say that the question was repetitive, therefore the objection ought to be sustained.

Be that as it may, we believe that the testimony at this point was not crucial, and we cannot say that the court's remarks, though error, were reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Rule 434, T.R.C.P. Appellant's eighth point is overruled.

None of appellant's points on appeal presents reversible error. The judgment is affirmed.

Affirmed.