**ARKANSAS LOUISIANA GAS COM-
PANY, Appellant,**

v.

**J. D. WARREN, Appellee.**

No. 518.

Court of Civil Appeals of Texas,
Tyler.

Nov. 19, 1970.

Rehearing Denied Dec. 10, 1970.

Ramey, Brelsford, Flock, Devereux &
Hutchins, Tom Henson, Mike Hatchell,
Tyler, for appellant.

Welby K. Parish and Wayne V. R.
Smith, Gilmer, for appellee.

DUNAGAN, Chief Judge.

J. D. Warren, appellee (plaintiff in the
court below), brought this suit in the Coun-
ty Court of Upshur County, Texas, against
Arkansas Louisiana Gas Company seek-
ing to recover as damages the value of
certain personal property stolen from his
farm due allegedly to the negligence of the
appellant (defendant in the court below)
who was lessee of the mineral interest in
and under the farm land, in cutting a
chain on a gate which led to appellee's
wells and in leaving the gate open so as
to permit the thief to make entry onto the
property.

Upon defendant's general denial, the case
was tried before the court, which found
the appellant liable to appellee in the
amount of $587.05 and entered judgment
against appellant accordingly for that sum,
plus interest and cost. Appellant has per-
fected its appeal to this court.

In response to appellant's requests there-
for, the court filed both original and ad-
ditional findings of fact and conclusions of
law to both of which appellant duly and
timely excepted.

Appellant's first contention is there is
no evidence of probative force to support

the court's finding that it cut the chain on the gate in question and the judgment based thereon.

The evidence shows that J. D. Warren is the owner of a large tract of land about 1½ miles east of Gilmer, Texas, which is located on Highway No. 1403. The particular land in question was completely surrounded by a five-strand, barbed wire fence. Warren maintained three gates onto the property—the main gate across the road to his house and two subsidiary gates at other places—all of which were under lock and key. Some time prior to the incident in question (the exact date not disclosed by the evidence), Warren executed two oil and gas leases—one to Charlie Roberts and one to Arkansas Louisiana. Subsequently, though under which lease is not altogether clear, Indian Rock Well No. 1 was drilled by DeLaney Drilling Company under a farm-out from Arkansas Louisiana, appellant.

For the drilling of Well No. 1, it was necessary to make an opening in the fence and construct the road for the movement of heavy machinery onto the premises. The opening was made about 50 feet south of appellee's main gate and, later, a cattle guard was installed there by an employee of DeLaney Drilling Company. This gate is referred to as the "drill site gate".

About the time Well No. 1 was completed and began to produce, another DeLaney employee put a heavy chain and lock across the drill site gate to protect the Warren property. This chain and lock stayed intact until the appellant began operations to drill Indian Rock Well No. 2. When it became necessary for appellant to move its heavy machinery onto the drill site of Well No. 2, the company used the drill site gate. The chain across the gate was moved and put across another cattle guard so as to block off traffic to Well No. 1. This left the drill site gate open and it stayed in that condition until appellee put a heavy rope across it. Warren testified that the rope was taken down, and

he knew that the appellant took it down once. He also testified that he bought a chain and some of his employees installed it across the drill site gate. This occurred, so appellee Warren thought, sometime around February 9, 1966, and the newly installed chain remained across the drill site gate until the theft in question occurred sometime around February 28 or March 1, 1966.

The evidence further shows that on a Monday morning, February 28, 1966, Warren discovered that the chain across the drill site gate had been cut with a heavy bolt cutter, a type not commonly found on a farm, and several items of personal property had been stolen, namely a post hole digger, an auger, two tarpaulins, eighty creosote posts, an aluminum gate and the chain that was cut. The chain was cut sometime between 4:00 o'clock p. m. Sunday and 10:00 or 10:30 o'clock a. m. the following Monday morning when the theft was discovered. This period of time in which it is alleged that the theft occurred was established by the fact that a heavy rain fell in the area which lasted until about 4:00 o'clock p. m. on the Sunday of the weekend of the theft. As a result of this rain, all previous motor vehicle tracks going into the Warren property were erased. At the time the theft was discovered, which was after the rain, there were found two sets of tire tracks. The first vehicle through the drill site gate after the rain had the size of tires which are commonly found on intermediate size automobiles. The first car entering onto the property proceeded to the site of the first well, from there to the second well, and then departed from the property. Subsequent to this time a second vehicle came through the opening where the chain had been cut. This second vehicle which was estimated to be a pickup truck, "three-quarter ton or one-ton pickup", came in after the first car had departed from the Warren property and proceeded directly to the situs of the Warren property that was stolen. Since the larger tracks appeared to "cross over" the smaller ones,

it was determined that the vehicle with the smaller tires had entered the drill site gate and traveled the road first. However, it was admitted that it was impossible to tell what amount of time separated entrance or departure of the two vehicles. The general time interval during which both vehicles entered the Warren property was determinable, however. As stated above, preceding the theft, there had been a heavy rain which began Saturday night and ended late Sunday afternoon in the general area of the Warren property which had washed away all existing car tracks. Thus, the tracks in question had been made after the rain had stopped which, at one point, was estimated to have been around 4:00 o'clock p. m. Sunday afternoon. From this, appellee theorized that the theft had to have occurred Sunday night or early Monday morning.

The evidence also shows that the stolen property had been stored in the open in about the same location for approximately 25 years; some of the property was visible from the highway. During the 25 years or more prior to this theft that Warren owned the land on which this property was located, the land was fully enclosed by a five-strand, barbed wire fence and there were three aluminum gates allowing access thereto. These gates were always locked and were never forcefully opened, broken into or molested until after the appellant began its operations upon said property, after which time there occurred the removal of the rope across the opening to the property and the cutting of the chain that is the basis of this suit.

Appellee and his employee, Bradford Ford, testified that prior to the theft and until the general time of the theft the appellant's trucks had been seen frequently on the Warren property and also after the theft. Appellee by his testimony verified that the chain was in place Sunday morning, February 27, 1966, and between that time and the time the loss was discovered on February 28, 1966, no appellant's ve-

hicles were seen entering upon or leaving any part of the Warren property.

The appellee in his brief says "The only issue in this case is whether or not an agent or employee of the appellant, Arkansas Louisiana Gas Company, cut the chain across the drill site gate in question, and left the gate open after completing his business on the Warren Farm." The circumstances which appellee seems to rely on as proof that an agent or an employee of appellant cut the chain and left the gate open are that the vehicle making the first entrance onto the Warren property on the occasion in question belonged to appellant and that the driver thereof cut the chain in question because (1) of the fact that appellant's vehicles were seen on the property frequently up to near the time of and after the theft going from well to well, (2) of the fact that the tracks of the vehicle making the initial entrance onto the land went to both wells, (3) the gates to Warren's property were never forcefully opened or molested until after appellant began its operations upon the property, and (4) the chain was cut with a pair of heavy bolt cutters, the kind not commonly found on farms. In this connection, appellee Warren testified:

"Q. Now, you say the tracks went to both wells and drove back out?

"A. Yes, sir, the big truck—in other words, the big truck that went in and did the damage pulled up and picked this stuff up, crossed over the tracks that were made by an automobile that went to both wells and came out. *That is the only way I know it was Arkansas cut the gate.*" (Emphasis added.)

Relating to the question of who cut the chain the appellee gave this very significant testimony:

"Q. Just a minute, did you personally see anybody cut that chain?

"A. No, sir.

"Q. Do you know of anyone who did see anyone cut that chain?

"A. No, sir.

\*   \*   \*   \*   \*   \*

"Q. You would admit, would you not, since you didn't see the chain cut and you didn't see anyone take the property out, it could have been anyone who cut your chain, wouldn't you admit that?

"A. Yes, I would admit that anyone that had an instrument could have cut the chain.

"Q. Because you don't know who cut it as far as your personal knowledge?

"A. I didn't see anyone cut it.

"Q. So it could have been anyone who stole your property, couldn't it.

"A. I didn't see the person carry the property off."

Since the only "act" appellee proved was the severance of the chain across the drill site gate, and since appellee testified that it was that "act" which he contends made appellant liable to him, therefore under the record in this case the question presented here is whether or not there is legal and factual sufficiency of the evidence to support the findings that appellant's agents or employees cut the chain across the drill site gate and left the gate in an open, unprotected condition. In our opinion it is not sufficient.

Since the appellee offered no evidence which would directly link appellant with the cutting of the chain, the judgment below must find evidentiary support solely in circumstantial inference.

■ For circumstantial inference to be probative, the circumstances relied upon must support the inference beyond mere surmise or suspicion. Green v. Texas & P. Ry. Co., 125 Tex. 168, 81 S.W.2d 669, 673 (1935); Texas & N. O. R. Co. v. Warden, 125 Tex. 193, 78 S.W.2d 164, 167 (1935). This court in Bledsoe v. Yar-borough, 422 S.W.2d 222 (Tex.Civ.App., 1967, n. w. h.) cited the rule thusly:

"To establish a fact by circumstantial evidence, the circumstances relied on must have probative force sufficient to constitute a basis of legal inference; it is not enough that they raise a mere surmise or suspicion of the existence of the fact or permit a purely speculative conclusion. The circumstances relied on must be of such a character as to be reasonably satisfactory and convincing. At all events they must not be equally consistent with the nonexistence of the ultimate fact. \* \* \*"

■ Appellee has the burden to establish his alleged cause of action against appellant by legal and competent evidence, i. e., that the appellant did, in fact, cut the chain in question and left appellant's property unprotected. Mobile, Inc. d/b/a Mobile Well Service v. Cone, 457 S.W.2d 175 (Tex.Civ.App., Tyler, 1970, writ ref., n. r. e.), and cases therein cited. We do not think the appellee has discharged this burden.

■ Evidence that it is possible that appellant cut the chain to the drill site gate cannot be accepted as evidence it did so. It must be proved. Leatherwood Drilling Company v. TXL Oil Corporation, 379 S. W.2d 693, 697 (Tex.Civ.App., Dallas, 1964, writ ref., n. r. e.); Bowen v. East Texas Hospital Foundation, 400 S.W.2d 843, 849 (Tex.Civ.App., Tyler, 1966, writ ref., n. r. e.), and Mobile, Inc. v. Cone, supra.

It is our opinion that the circumstances as shown by the evidence in the instant case raises no more than a mere surmise or suspicion that appellant's agents or employees were the one responsible for and did, in fact, cut the chain to the drill site well and left the property unprotected. These circumstances can be said to be equally consistent with a conclusion that some other person cut the chain.

 Moreover from the facts proved the conclusion that it was appellant's agents or employees that cut the chain in question can only be reached by basing one inference upon another. First, from the facts on the ground, it must be inferred that initial entrance was made by one of appellant's vehicles; then, it must be presumed that the vehicle was driven by one of appellant's agents or employees; then, it must be presumed that said person was acting within the course and scope of his employment at the time; and, finally, it must be presumed said agent or employee cut the chain instead of entering by key. It is well established in this state that one presumption cannot be based upon another presumption. Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791, 794 (1955); Imperial Casualty and Indemnity Company of Omaha, Nebraska v. Terry, 451 S.W.2d 303 (Tex.Civ.App., Tyler, 1970, n. w. h.); Texas Sling Company v. Emanuel, 431 S.W.2d 538 (Tex.Sup., 1968), and East Texas Theatres, Inc. v. Rutledge, 453 S.W.2d 466, 469–470 (Tex.Sup., 1970).

When the contention is made that there is no evidence as made in this case, the reviewing court may consider only that evidence, if any, which, viewed in its most favorable light supports the trial court's findings and judgment, and we must disregard all evidence which would lead to a contrary result. Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79; 303 S.W.2d 359 (1957). In keeping with our duty we have diligently searched the record for all probative evidence favorable to the appellee and have found none. Consequently, we have concluded that the trial court's findings and conclusions of law that the appellant cut the chain in question and left the contents on the Warren farm without any protection are not supported by any probative evidence.

We have not discussed appellant's point relating to the insufficiency of the evidence to support the trial court's finding that appellant cut and removed the chain, but if this point should be reached, we would hold that the evidence is insufficient to support such judgment.

The judgment of the trial court is accordingly reversed and rendered in favor of appellant.

Reversed and rendered.