Benny **FARLEY**, by and through his next
Friend, Charles Ballman, Appellant,

v.

**M M CATTLE COMPANY, Appellee.**

No. 8465.

Court of Civil Appeals of Texas,
Amarillo.

Oct. 21, 1974.

Rehearing Denied Nov. 18, 1974.

Miller, Gann & Perdue, Jim M. Perdue, Houston, Edwards, Smith & Associates, Amarillo, for appellant.

Gibson, Ochsner, Adkins, Harlan & Hankins, A. B. Hankins, Kolander, Templeton & Hamilton, Amarillo, for appellee.

ELLIS, Chief Justice.

Plaintiff Benny Farley brought suit for damages for personal injuries sustained when the horse he was riding collided with another horse ridden by a co-worker while they were in the process of rounding up cattle belonging to the defendant, M M Cattle Company. At the conclusion of plaintiff's evidence, the trial court entered a take-nothing judgment against the plaintiff on the basis of defendant's motion for an instructed verdict. The plaintiff has brought this appeal from such judgment. Affirmed.

On July 12, 1972, Benny Farley, Danny Beebe, James Guinn and Cyril Houston "Bunk" Farley, were rounding up calves from a pasture of Bear Creek Ranch owned and operated by the defendant cattle company. "Bunk" Farley was the foreman of the ranch and the father of Benny Farley. On the occasion in question, Danny Beebe, Benny Farley and James Guinn, on horseback, were engaged in moving some calves when one of the calves broke away from the group. Both Danny Beebe and Benny Farley started after the calf on their respective horses. While pursuing the calf, the horses ridden by Beebe and Farley were heading in such a direction or course which, if continued, would result in a collision of the two horses. Upon discovering the impending peril, Danny Beebe reined his horse to the left away from Benny Farley's horse; however, at almost the same instant Benny Farley's horse struck the side of Danny Beebe's horse, and as a result of the collision, Benny Farley suffered severe personal injuries.

The pleadings upon which the plaintiff went to trial alleged negligence on the part of defendant in four respects: (1) in furnishing plaintiff a horse which was unsafe to use for the work that was to be done; (2) in instructing plaintiff to use the horse for rounding up cattle under such circumstances as to pose unreasonable risk and harm to him; (3) in failing to properly supervise the plaintiff; and (4) in failing to furnish plaintiff a horse which was suitable for the purpose for which the animal was intended to be used. Further, plaintiff alleged that such negligence on the defendant's part was a proximate cause of the injuries sustained by him. In its answer, the appellee cattle company pleaded defensively, among other matters, that the plaintiff voluntarily encountered whatever risks existed in connection with using the horse; contributory negligence on plaintiff's part; plaintiff's assumption of risk; the fellow servant rule; the co-worker's negligence as a new and intervening cause; and the doctrine of parental immunity of the plaintiff's father which would protect the defendant as the father's employer.

Upon conclusion of plaintiff's evidence, the defendant presented a motion for an instructed verdict based upon contentions that the evidence submitted by the plaintiff failed to raise a fact issue for jury determination of any of the alleged acts of negligence or proximate cause on the part of defendant. Further, the defendant contended that the evidence introducd established as a matter of law that the plaintiff

voluntarily exposed himself to the risk, was guilty of contributory negligence or assumed the risk. Additionally, defendant contended that the plaintiff was barred from recovery by the fellow servant rule, parental immunity, or that negligence of Danny Beebe was established as a matter of law thereby constituting a new and intervening cause. The plaintiff's appeal from the take-nothing judgment entered by the trial court is predicated upon ten points of error.

In the first eight points the plaintiff-appellant complains of the action of the trial court in granting the instructed verdict. By points one and two, appellant contends that the trial court erred in granting such instructed verdict and entering judgment for appellee on the grounds that the evidence presented raised fact issues of (1) negligence and (2) proximate cause. By points three through eight, the appellant contends that it could not be held that the respective defenses pleaded and specifically urged by appellee in its motion for instructed verdict were established as a matter of law. Further, appellant contends by points nine and ten that the trial court erred in excluding certain testimony relating to the co-worker's description of appellant's facial expression immediately prior to the accident and the opinion of plaintiff's father as a witness concerning the cause of the accident based upon a hypothetical. question.

Although as a result of the injury Benny Farley was unable to testify, the plaintiff-appellant contends that the evidence admitted by the court was sufficient to raise issues of negligence and proximate cause. Plaintiff further contends, alternatively, that the trial court excluded admissible evidence which would bear on such issues and be sufficient to raise fact questions for the jury's determination. In view of the latter contention, we have determined to consider initially appellant's points nine and ten complaining of the court's action in excluding the testimony concerning the facial expression of the plaintiff just prior to the

collision and Bunk Farley's opinion testimony regarding the cause of the accident resulting in the plaintiff's injuries.

The only persons present at the precise location of the collision were the plaintiff, Benny Farley, and Danny Beebe. Because of the injuries sustained, the plaintiff was unable to testify, and Danny Beebe was unable to testify regarding the exact cause of the collision, for he declared that he was looking in the opposite direction at the time of the collision. However, Danny Beebe was asked by plaintiff's attorney to describe the expression on Benny Farley's face just prior to the collision. The defendant objected to such question on the grounds that it called for an opinion and conclusion which the witness was not qualified to give. The objection was sustained by the trial court and the testimony was excluded from consideration by the jury; however, such testimony was heard outside the presence of the jury for the purpose of perfecting the bill of exceptions. The answer of the witness, Danny Beebe, to such question was, "It's an expression that people get on their faces when things aren't going right." He then tried to further clarify this answer in response to questions by plaintiff's attorney by stating, as an example, "If you was (sic) on a good horse, and the good horse didn't do what you like, this expression would be on your face." The plaintiff contends, by point number nine, that such testimony is admissible under the "shorthand rendition of facts" or "collective facts" exception to the general rule of inadmissibility of opinion testimony of non-expert witnesses, and therefore it was error for the trial court to exclude such testimony from the jury's consideration.

 It is well settled in Texas that non-expert opinion of a lay witness is admissible provided the facts are so numerous, complicated or evanescent that they cannot be communicated to the minds of the jurors by words or gestures in such a manner as to give them the *knowledge* possessed by the witness. Colls v. Price's

Creameries, Inc., 244 S.W.2d 900 (Tex. Civ.App.—El Paso 1951, writ ref'd n. r. e.). Statements tending to show emotions or demeanor are admissible as a "shorthand" rendering of facts. See 2 McCormick and Ray, Texas Evidence § 1397 (2d ed. 1956), and authorities cited therein. If, however, the opinions are the result of the voluntary process of reasoning by the witness or are in the nature of mere guesses, surmises and conjectures, they are inadmissible. See 23 Tex.Jur.2d Evidence §§ 455, 502 (1961) and authorities cited therein.

■ Danny Beebe testified that he *did not know* what Benny Farley did in an effort to avoid the collision and that he *did not know* whether or not Benny tried to rein his horse. His answer to the question regarding Benny's facial expression goes further than mere description of a common, well-known expression or statement tending to show emotion or demeanor. Since it is recognized that one person cannot possibly know another's state of mind, his testimony concerning such is necessarily based on conjecture. 2 McCormick and Ray, Texas Evidence, supra, § 1428. It appears that the statements given by Danny Beebe should be regarded as inferences based upon surmise, conjecture, or conscious reasoning, and not based upon factual knowledge possessed by the witness. Therefore, it is our opinion that the trial court did not err in excluding the testimony of Danny Beebe regarding the expression on Benny Farley's face. Appellant's point number nine is overruled.

■ By point number ten, appellant contends that the trial court erred by not admitting certain testimony of Bunk Farley as an expert witness. Bunk Farley, foreman of the defendant cattle company and father of plaintiff, was the only person other than plaintiff to ride "Crowbar," the horse being ridden by Benny Farley at the time of the accident. He broke and trained the horse and trained the plaintiff to ride. Further, he testified that he had worked on ranches and handled horses for

a number of years. After such qualification and an admission that the witness had not seen the accident, he was asked, in order to perfect the bill of exceptions, a hypothetical question as to whether Benny Farley, in his opinion, would have reined his horse to the right in such a situation in order to avoid a collision. The answer was to the effect that Benny would have tried to rein Crowbar in the opposite direction. Mr. Farley was further asked if in his opinion Crowbar would have responded. The answer was, "At a high speed, I'd say—rather say he would not control that easy and quickly." He was further asked hypothetically if he had an opinion as to what caused Crowbar to run into Danny Beebe's horse. The answer was, "No sir, I don't know what would have caused the horse to run into Danny Beebe's horse. I just don't know. I couldn't answer that yes or no." Additionally, Bunk Farley gave the following testimony:

"Q. Taking the facts that I've given and the way the accident happened and with the collision of Crowbar under these facts, do you have any other explanation or any other facts other than what you have testified to, that Crowbar did not rein or would not rein at a high speed? Have you any other explanation for it?

"A. He was just green to start with.

"Q. Do you have any other explanation as to how this could have happened other than the fact that Crowbar, because he was green, did not respond to the rider's control?

"A. Green and a high speed. That would be all that I would know."

There is no evidence that the witness had ever seen this horse and rider in a similar situation. It is our opinion that to admit testimony from the witness to the effect that Benny would have reined to the right and the horse did not promptly respond would necessarily amount to only a surmise, conjecture or speculation and not

rest upon reasonable probability, and thus lacks probative force. Flores v. Missouri-Kansas-Texas Railroad Company, 365 S. W.2d 379 (Tex.Civ.App.—Dallas 1963, writ ref'd n. r. e.); Central Mutual Insurance Company v. D. & B., Inc., 340 S.W.2d 525 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.).

In any event, Bunk Farley's testimony as a whole tends to indicate that the witness did not have an actual opinion as to the cause of the collision. When asked that exact question, he replied that he did not have an opinion; therefore, it would appear that the proferred testimony lacks probative force with respect to the vital question of causation. Accordingly, appellant's point number ten is overruled.

■■ Having overruled plaintiff's contentions regarding the excluded testimony, we shall next consider whether the evidence admitted raised fact issues regarding the alleged negligence and proximate cause. In determining whether it was proper to instruct a verdict in this case, we shall view the evidence which was admitted in the light most favorable to the plaintiff, as required. We recognize that it is proper to indulge against the instruction every inference that may be properly drawn from the evidence, and that a peremptory instruction is proper only when the evidence is such that no other verdict can be rendered and the winning party is entitled as a matter of law to a judgment. White v. White, 141 Tex. 328, 172 S.W.2d 295 (1943).

When the record is so viewed it reflects that the horse Crowbar was foaled in 1967 by a mare owned and placed upon the ranch for general use by Joe Whittenburg, president of defendant cattle company. The colt was named Cimarron, and no specific reason was assigned for the use of the nickname "Crowbar." Bunk Farley began breaking and training the horse in 1969 and used the horse for ranch work during that season as well as the 1970 and 1971 seasons prior to the accident for a to-tal of approximately 100 days. The horse was not ridden by anyone other than Bunk Farley and, for the period of sixty to ninety days just prior to the accident, no one had ridden the horse. On the day in question, Bunk Farley, acting in his capacity as foreman of defendant cattle company, directed Benny Farley to use the horse for the purpose of rounding up and moving range calves.

Bunk Farley described the horse's response to training as "broncish," slow, and "harder than the usual colt to get along with." He further described the horse as fairly nervous, green broken, not dependable, and with an "ill" disposition. Ill disposition was said to mean that Crowbar would not "respond to what you wanted him to do." but "he'd just rather do it the other way." "Green broken" referred to a horse that was not fully trained. Bunk Farley also testified that the horse had tried to throw him and had stumbled with him; however, the horse was healthy and had no physical impairments. He testified that Crowbar would not perform as well or as easily as other horses, although he would perform.

Billy Wayne Burton, a part-time cowboy, testified that he had observed Bunk Farley ride Crowbar while working cattle on two occasions in the spring of 1971. He observed that the horse was tied behind a pickup and led around the pasture before being mounted by Bunk Farley. Such process was for the purpose of "taking the edge off" so that the horse is not as likely to buck. He stated that on one occasion, as Burton and Bunk were riding together, the horse Crowbar stepped on a piece of wire and "jumped almost in the saddle" with Burton. He further testified that based upon his observations on those two occasions, he would not classify Crowbar as a suitable cowhorse.

Danny Beebe testified that he had observed Crowbar prior to the day of the collision; that Crowbar had not been ridden very much; and that he was always led

behind a pickup before being ridden. He had never seen anyone other than Bunk ride Crowbar. He stated that the horse did not neck rein well, would buck and was stubborn and unpredictable.

James Guinn, a cowboy of 15 years and an employee of defendant cattle company, testified that he had been around the horse Crowbar a few times. He further stated that Crowbar would not rein well.

All of the witnesses, each with considerable experience, testified to the effect that in working cattle a good cowhorse was necessary. The qualities were basically that the horse must have a good disposition, neck rein fairly well, respond to stop and go commands, be predictable, calm and quiet. In addition, each testified that it would be dangerous and the possibility for injury was enhanced when riding an inexperienced horse or one that was not dependable, predictable, or would not respond readily to reining.

Benny Farley was fifteen years of age at the time of the accident and had been brought to the Bear Creek Ranch at the age of one year. Bunk Farley testified that he began teaching Benny to ride when he was approximately four years old, and by the time Benny was six to eight years old, he began to help Bunk with the chores around the ranch. Benny was an experienced rider and described by his coworkers as a "good hand." On previous occasions Benny had broken broncs and participated in rodeos in the calf roping events. He raised calves of his own in an area on Bear Creek Ranch and practiced his roping with those calves. He was permitted to use some of the cattle company's feed for the calves and his personal horses. Although it was disputed as to whether he was paid any money by the defendant cattle company, it is undisputed that he did the regular work of a cowboy on the Bear Creek Ranch.

On the date of the accident, Danny Beebe led Crowbar for a period around the pasture in order to "warm" or "limber" him

up, and Benny Farley mounted the horse. Upon mounting by Benny, Crowbar crowhopped or tried to pitch; however, Benny was able to control the horse. Calves in two pastures were gathered and when the calves were being moved, one calf came out from the herd and it was in trying to bring this calf back to the herd that the collision occurred.

As previously indicated, the only persons at the exact location of the collision were Danny Beebe and Benny Farley, and because of Benny's injury, he was unable to testify. Danny Beebe testified that when the calf broke away he took out after it and that he did not see Benny start after the calf, but he soon discovered that the calf was between Benny's horse and his horse. The calf and both horses were running and it became apparent to Danny that unless there was a change in the course being pursued by the horses a collision would result. Danny testified that he neck reined his horse away from the calf to the left and that his horse responded; however, after traveling approximately five feet, or almost the same instant that he turned, he saw Crowbar's head go down and felt the head hit his leg. Danny further testified that his horse went to his knees and then got up, and it was at that time he saw Benny's horse standing over Benny. Danny Beebe did not know what happened to the calf or what Benny did to try to avoid the accident. He testified that he was looking in the opposite direction from the time he began turning away from the calf.

The burden was on the plaintiff to prove the negligence of the defendant and that such negligence was the proximate cause of the injury. Even if negligence on the part of defendant is shown, it cannot be presumed that it was the cause of plaintiff's injuries. Westbrook v. Texas & P. Ry. Co., 203 S.W.2d 279 (Tex.Civ. App.—Eastland 1947, writ ref'd n. r. e.); Kelley v. Burlington-Rock Island R. Co., 100 S.W.2d 164 (Tex.Civ.App.—Amarillo 1936, writ ref'd). Therefore, assuming

that there was a duty upon defendant to furnish a suitable horse to plaintiff and that duty was breached by furnishing an unsuitable horse, it is then incumbent upon plaintiff to show that such breach was the proximate cause of plaintiff's injury. The mere fact of the collision and the subsequent injury standing alone cannot establish that fact. Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195 (1937); Thoreson v. Thompson, 431 S.W.2d 341 (Tex.1968); Calhoun v. Padgett, 409 S. W.2d 890 (Tex.Civ.App.—Tyler 1966, no writ).

Proximate cause cannot be established by mere conjecture or guess nor may it be presumed; it must be proved by evidence of probative force. Leatherwood Drilling Company v. TXL Oil Corporation, 379 S.W.2d 693 (Tex.Civ.App.—Dallas 1964, writ ref'd n. r. e.); B. M. & R. Interests v. Snyder, 453 S.W.2d 360 (Tex. Civ.App.—Tyler 1970, writ ref'd n. r. e.). It is recognized that proximate cause, like any other ultimate fact, may be established from the circumstances surrounding the event. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958); Grossman v. Tiner, 347 S.W.2d 627 (Tex.Civ.App.—Waco 1961, writ ref'd n. r. e.); Boddy v. Canteau, 441 S.W.2d 906 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.). However, in the instant case, in order to raise a fact issue on causation, the circumstances surrounding the collision must have sufficient probative force to constitute the basis of a legal inference as to the existence of the fact of proximate cause. Imperial Casualty & Indem. Co. of Omaha, Neb. v. Terry, 451 S.W.2d 303 (Tex.Civ.App.—Tyler 1970, no writ); 24 Tex.Jur.2d Evidence § 728, p. 399 (1961); Green v. T. & P. Ry. Co., 125 Tex. 168, 81 S.W.2d 669 (Tex. Com.App.1935, opinion adopted). It is well settled that whether or not negligence, when established, is the proximate cause of an injury, is a separate and independent issue from that of the negligence complained of, and its proof is just as essential to a recovery as is the proof of negligence itself. Fort Worth & D. C. Ry. Co. v. Bell, 14 S.W.2d 856 (Tex.Civ.App.—Fort Worth 1929, writ ref'd).

Proximate cause consists of two concepts: (1) cause in fact and (2) foreseeability, both of which must be present. Clark v. Waggoner, 452 S.W.2d 437 (Tex.1970); Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560 (1961); Kaufman v. Miller, 414 S.W.2d 164 (Tex. 1967). The cause in fact element means that there must be a cause which produces an event and without which the events would not have occurred. Assuming that the plaintiff established the foreseeability element by the testimony of the witnesses to the effect that it would be dangerous and unsafe to use a horse that was not fully trained and hard to rein when working cattle, it is still necessary to show cause in fact. Baumler v. Hazelwood, supra. It is our opinion that even if all alleged acts of negligence were proven, plaintiff has failed to show that such negligence was the cause in fact of plaintiff's injury.

In the absence of testimony by Benny and since Danny Beebe did not observe Benny at the exact time of the collision and was unable to testify as to the cause of the collision, plaintiff must necessarily rely on the circumstances in order to show that defendant's negligence was the cause of the collision. The circumstances in question may not amount to merely a surmise, suspicion, or purely speculative conclusion as to the existence of the facts. Green v. T. & P. Ry. Co., supra; Mobile, Inc. v. Cone, 457 S.W.2d 175 (Tex.Civ. App.—Tyler 1970, writ ref'd n. r. e.). Moreover, the circumstances relied upon must themselves be proved by direct evidence; they may not be shown by inference or presumption. St. John's Regular Baptist Ass'n v. Long, 211 S.W.2d 607 (Tex.Civ.App.—Austin 1948, writ ref'd n. r. e.).

Danny Beebe testified that when it became apparent that the horses were on a collision course he reined his horse to the left and, at that time there was sufficient time and distance that, if Crowbar had

gone to the right, the collision could have been avoided. However, he also testified that he turned away at that instant and did not see Benny or Crowbar again until after the collision and that he never saw the calf again. He further testified that he did not know whether Benny tried to rein to the right or did anything to avoid the collision. There is testimony within the record that indicates that the calves being worked were range calves of approximately 400 pounds and that they had not been around people for some time and, therefore, were inclined to be wild or nervous. Also, the possibility was presented that the calf being chased turned into the horse, Crowbar, which could have caused the horses to collide rather than the collision being caused by an unsuitable trait exhibited by Crowbar or fault of the rider.

The rule as to sufficiency of circumstantial evidence is correctly stated and illustrated by the cases relied upon by appellant. Such rule is that plaintiff is not required to exclude the probability that an accident might have occurred in some other way, but only to show by a preponderance of the evidence that it probably occurred in the manner alleged. See B. M. & R. Interests v. Snyder, supra; Burlington-Rock Island R. R. Co. v. Ellison, 140 Tex. 353, 167 S.W.2d 723 (1943). The cases cited and relied upon each establish by direct evidence circumstances from which a reasonable inference of the alleged causation can be drawn. In Collier v. Hill & Hill Exterminators, 322 S.W.2d 329, 336 (Tex.Civ.App.—Houston 1959, no writ), the court stated that the evidence precluded every reasonable hypothesis except that which was alleged. In all circumstantial evidence cases, it is a matter of balancing the probabilities; however, the circumstances relied upon must have some probative force. B. M. & R. Interests v. Snyder, supra.

In the instant case, it is necessary to infer that the assumed negligent acts of defendant cattle company proximately caused the injury of plaintiff from the circumstances that were shown from the direct evidence. It is necessary to draw the inference that Benny Farley tried to turn the horse Crowbar away from Danny Beebe's horse in an attempt to avoid the collision; that the horse Crowbar did not respond; that the calf did not turn back into the horse Crowbar; or that the horse Crowbar stumbled because of his own propensities and did not stumble from something on the ground; and that there was time to avoid the collision. If from the direct evidence circumstances are established from which equal possibilities as to causation can be inferred, then the circumstantial evidence is of no legal effect. Imperial Casualty & Indem. Co. of Omaha, Neb. v. Terry, supra; South Texas Water Co. v. Bieri, 247 S.W.2d 268 (Tex.Civ.App.—Galveston 1952, writ ref'd n. r. e.); Arkansas Louisiana Gas Company v. Warren, 460 S.W.2d 460 (Tex.Civ.App.—Tyler 1970, no writ); Comet Motor Freight Lines v. Holmes, 175 S.W.2d 464 (Tex.Civ.App.—Waco 1943, writ ref'd w. o. m.).

We find no evidence, direct or circumstantial, that Benny Farley tried to turn or rein the horse, or that if he did try to rein him, that the animal failed to respond. In order to reach the ultimate fact as to causation, it would be necessary to base one presumption upon another presumption, and it is well established that such process is not permissible and is of no probative force. Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791 (1955); Texas Sling Company v. Emanuel, 431 S. W.2d 538 (Tex.1968); East Texas Theatres, Inc. v. Rutledge, 453 S.W.2d 466 (Tex.1970).

Accordingly, we hold that plaintiff has failed to meet the burden of establishing that "but for" the alleged negligent acts of defendant the collision would not have occurred. Such fact has not been established beyond a surmise, speculation, or conjecture and the causal connection must be established beyond such point. Ussery v. Ewell Hodges, Inc., 417 S.W.2d 332 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.). Where the facts and circumstances in

**706**

evidence fail to establish with any reasonable certainty the manner in which the accident occurred and the causal connection between the alleged negligent act of defendant and the plaintiff's injury, it is proper for the trial court to instruct a verdict. Westbrook v. Texas & P. Ry. Co., supra; Bowen v. East Texas Hospital Foundation, 400 S.W.2d 843 (Tex.Civ.App. —Tyler 1966, writ ref'd n. r. e.). Rounsaville v. Bullard, supra. Appellant's point number two is overruled.

In view of our overruling of appellant's contentions regarding the excluded evidence, as set out in points numbers nine and ten, and our disposition of appellant's point number two concerning the failure of appellant to raise a fact issue regarding the vital matter of causation, we do not deem it necessary to discuss the remaining points presented, including those relating to various defenses urged by appellee. Accordingly, the judgment of the trial court is affirmed.