**D. A. BOWEN, Appellant,**

v.

**EAST TEXAS HOSPITAL FOUNDATION,
d/b/a Medical Center Hospital,
et al., Appellees.**

No. 161.

Court of Civil Appeals of Texas.

Tyler.

March 3, 1966.

Rehearing Denied March 24, 1966.

Wm. Emerson Stone, Jr., Stone & Stone, Jacksonville, for appellant.

Tom B. Ramey, Jr., and Donald Carroll, Ramey, Brelsford, Flock & Devereux, F. Wilbert Lasater, Spruiell, Lowry, Potter, Lasater & Guinn, Tyler, for appellee.

DUNAGAN, Chief Justice.

This suit was instituted in the 7th District Court by the appellant, D. A. Bowen, against the appellees, East Texas Hospital

Foundation, d/b/a Medical Center Hospital, Dr. H. H. Muntz, Dr. G. Wm. Burch and Dr. Vernon V. Goss, seeking to recover damages for injuries he received while a patient in the Medical Center Hospital. Appellees Burch and Goss were partners.

In Paragraph 2 of appellant's first amended original petition upon which he went to trial, he alleges that as a patient of the defendant Muntz and defendants Burch-Goss, he was admitted to the defendant hospital on or about June 18, 1962, for surgery upon his right eye for a detached retina, which operation was performed on June 21, 1962. That as a result of this operation, the plaintiff's eyes were both covered with bandages and plaintiff was in pain, suffering from discomfort, and would toss and turn, and in fact, would be from all accounts highly irrational, not only during the daylight hours, but also during the nighttime hours as well, which fact was known to the defendants.

In Paragraph 3 of said petition, he further alleges that unknown to him, but prior to June 26, 1962, his family requested that bed rails be placed on the bed because they were afraid that plaintiff would in fact fall out of said hospital bed, and such request went unheeded by the defendant doctors and by the agents, servants and employees of the defendant hospital, and that although requested, the defendants failed to heed the request, which failure to act was the proximate cause of the injuries sustained by plaintiff.

In Paragraph 4 thereof, he alleges that the defendants Muntz and Burch-Goss were either jointly or severally responsible for the care and treatment of the plaintiff, which included the duty to enter such orders on the plaintiff's chart provided for such purpose, or otherwise see to it that the plaintiff's person and physical being was not subjected to injury arising out of the care and treatment of the plaintiff, their patient, and said defendants wholly failed to enter such orders for the safety of their patient, which orders were as follows:

(a) The installation of bed rails; and/or

(b) The installation of restraining devices; and/or

(c) The prescriptions of drugs and medications to place plaintiff in a state of physical being that would keep the plaintiff in a controlled environment and which failure to so prescribe as above was negligence and the proximate cause of the injuries and damages sustained by plaintiff as hereinafter alleged.

In Paragraph 5 of the petition, he alleges that in the event the plaintiff is mistaken as to whose duty it was to see to it that his needs were met, and that it was not the duty of the defendant doctors, then and in that event, he says that it was the duty of the defendant hospital to meet the request of the family of the patient and install bed rails and/or such other restraining devices for the protection of the physical well being of the patient which was not done, and which omission to act after notice thereof and request therefor was negligence, which negligence was a proximate cause of the injuries and damages to the plaintiff.

Plaintiff further alleges in Paragraph 6 of the petition that the following injuries and damages were sustained as a result of the negligence aforesaid, to-wit:

(a) That plaintiff has lost the entire use of his right eye due to the fact that the fall from the bed destroyed the beneficial effects of the surgery previously performed on plaintiff's right eye; and

(b) That plaintiff received a broken neck as a result of the fall, which fracture thereof was not discovered for a 10 day period through the negligence of the defendants Muntz and Burch-Goss, during which time plaintiff was in pain far more severe and uncomfortable than prior to the fall when plaintiff was recovering from the surgery upon his right eye.

Appellant seeks to recover the sum of $37,900.00 for the alleged injuries against

the defendants who are appellees on this appeal.

The case was tried before a jury and at the close of plaintiff's evidence, each of the defendants moved for an instructed verdict upon the ground: (1) that plaintiff introduced no probative evidence of any negligence on their part; (2) that plaintiff failed to produce probative evidence that any negligence of the defendants was a proximate cause of his injuries. Defendants Burch and Goss further alleged in their motion for instructed verdict that the evidence showed plaintiff disobeyed doctor's instructions, which conduct was negligence and a proximate cause of his injuries as a matter of law. Dr. Muntz's motion for instructed verdict contained these additional grounds:

(a) There is no competent medical testimony that careful and skillful practitioners in this area under these conditions would have used bed rails or other restraining devices on the plaintiff;

(b) That the use of restraining devices in this case was a matter for medical judgment and even if some skillful practitioner would and some would not have used restraining devices, there can be no liability for exercise of judgment in making this decision;

(c) That the decision as to the use of restraining devices and medication for tranquilizing the plaintiff belonged to Dr. Burch and not to him, and that likewise the decision as to whether the second operation should have been performed immediately without cervical x-ray belonged to Dr. Burch and not to him. For these reasons, he could not be guilty of negligence in not making such decision;

(d) That there is no evidence of any damage to the plaintiff's neck by reason of the 10-day delay in discovering the fracture;

(e) That the evidence shows as a matter of law that the plaintiff and his wife were each guilty of contributory negligence in failing to provide personal attendance.

The defendant hospital moved for an instructed verdict on the following grounds:

(1) That there was no probative evidence showing the defendant guilty of any negligence;

(2) That there was no probative evidence showing that any act of negligence on the part of the defendant was a proximate cause of the plaintiff's fall;

(3) That there was no probative evidence that the defendant hospital had the duty to install bed rails or other restraining devices on the plaintiff's bed;

(4) That, if there was any negligence in failing to install bed rails or other restraining devices, defendant, as a charitable institution would be immune from liability of such negligence.

To properly define the scope of this appeal, it should be pointed out that appellant pleaded that several acts or omissions on the part of doctors Burch and Goss were negligence and a proximate cause of his injuries, to-wit:

(1) Failure to install bed rails on appellant's bed;

(2) Failure to use other restraining devices;

(3) Failure to prescribe proper medication;

(4) Failure to discover sooner plaintiff's neck fracture sustained in his fall.

In his brief in this court, however, appellant makes no factual statement, cites no testimony in the Statement of Facts, cites no case authority, and makes no argument concerning any alleged negligence on the part of any of the appellees, except that concerned with the failure to install bed rails. Although appellant's Points of Error were broad enough to include all pleaded grounds of negligence, the scope of his

Points must be determined by the statements and arguments thereunder. Saldana v. Garcia, 155 Tex. 242, 285 S.W.2d 197, 1956; Musick v. Pogue, 330 S.W.2d 696 (Tex.Civ.App.) 1959, writ refused, n. r. e. Therefore, this court considers all grounds of negligence other than the ones concerning bed rails as waived or abandoned. Rule 418, Texas Rules of Civil Procedure; Maryland Casualty Co. v. Stewart, 164 S.W.2d 800 (Tex.Civ.App.) 1942, writ refused; McDaniel v. Thompson, 195 S.W.2d 202 (Tex.Civ.App.) 1946, writ refused. Under this state of the record, this court will deal only with the question here presented concerning the failure to install bed rails.

Each of the defendants' motions were granted by the trial court and the case withdrawn from the jury and judgment rendered in favor of appellees and against appellant, to which the plaintiff-appellant excepted and has duly perfected his appeal to this court.

Among other contentions the appellant contends that the trial court erred in ruling that there was no evidence of probative force that either of these appellees were negligent in the care and treatment of D. A. Bowen sufficient to require the submission of said issue to the jury; (2) in rendering a judgment for the appellees, Burch and Goss, on the basis that there was no evidence of probative force that the negligence of these appellees proximately caused the fall and resulting injuries for the reason that there was evidence of probative force to support the submission of the issue of proximate cause as to the appellees, Burch and Goss; (3) in rendering judgment for the appellee, East Texas Hospital Foundation, d/b/a Medical Center Hospital, on the basis that there is no probative evidence that this appellee was guilty of any negligence which proximately caused the occurrence in question for the reason that there was evidence of probative force that required the submission of this issue; (4) in rendering a judgment for the appellee, H. H. Muntz, on the basis that there is no evidence that said appellee was guilty of any negligence, which proximately caused Mr. Bowen's fall, or any damage to Mr. Bowen, for the reason that there is evidence of probative value to support the submission of said issue to the jury.

Appellant Bowen was a patient of Dr. Muntz. He went to Dr. Muntz for a medical examination. Dr. Muntz gave him a complete physical examination. From this examination Dr. Muntz determined that the appellant might have a retinal detachment of the right eye and referred him to Dr. Burch, who is an eye specialist. Dr. Burch has limited his practice of medicine to the field of Ophthalmology during the period of time he has been in Tyler. The appellant was admitted to the Medical Center Hospital where Dr. Burch performed the surgery to correct the detached retina.

■ Since the burden of proof is upon the appellant to prove both negligence and proximate cause in order to establish a cause of action, Thomas v. Beckering, 391 S.W.2d 771 (Tex.Civ.App.) 1965, writ refused, n. r. e.; Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1 (1949), we do not undertake to decide the question of whether there is any competent evidence of negligence in the failure of appellees Burch-Goss and Muntz to order the use of bed rails or whether the appellee hospital breached any duty to the appellant in failing to install bed rails, but will pass to the issue as to whether there is any testimony of probative force showing that the failure to install bed rails is the proximate cause of the appellant's fall and injuries resulting therefrom.

Dr. Muntz testified as follows concerning the use of bed rails:

"Q What are bed rails for? What purpose do they serve, Doctor?

"A I think—I like to think of them as reminders to the patient that they are in the bed. If we sedate them at night, often they roll up against the bed rail,

they wake slightly enough to realize perhaps that they are at the edge of the bed, since this is a strange environment.

"Q Do they serve any purpose to keep a patient from falling out of bed?

"A On occasions.

"Q Is that one of their major purposes?

"A Yes, sir.

"* * *

"Q Doctor, if a patient decides he wants to get up out of bed rather than just rolling out in his sleep or something like that, is a bed rail going to keep him from getting up out of the bed?

"A Usually not.

"* * *

"Q Now, then, Doctor, I will ask you: do you think that a bed rail is really a proper kind of device that normally keeps somebody who is wanting to get out of bed and go to the bath room, will that protect them or just protect somebody who is liable to roll out of the bed in his sleep at night?

"A As stated earlier, it is a sort of gentle reminder to wake the patient up."

Dr. Burch gave the following testimony concerning the use of bed rails:

"Q What, Doctor, is your policy with reference to the use of bed rails * * *?

"A * * * I use bed rails very frequently but I use bed rails as an agent to warn a person that he is falling out of bed because he is sleeping in bed that is higher than he is accustomed to and often narrower than he is accustomed to, and needs something to warn him about falling off bed. But I have never used bed rails for some one I think is physically strong enough to and mentally disposed to climb out of bed. I have never used bed rails for someone like that."

Concerning the appellant's ability to crawl over the bed rails, Dr. Muntz testified:

"Q Up until, Dr. Muntz, the last time when you saw Mr. Bowen prior to the time that he fell, in your opinion, was Mr. Bowen physically able, if he so desired and if he so intended as a conscious effort on his part, was he physically able to have climbed over or gotten out of a bed equipped with bed rails?

"A Could he have done it?

"Q Yes, sir.

"A I am sure he could have."

The evidence shows that the plaintiff during his confinement in the hospital was somewhat irrational at times. This was detected primarily by his irrational talk.

The appellees contend that the trial court properly found that there was no probative evidence that failure to install bed rails or failure to have bed rails available was a proximate cause of plaintiff's fall.

■ Appellant's initial burden on this phase of the case was to establish that some act or omission on the part of the appellees or either of them was a cause, in fact, of his injuries; that is, a cause which produced the injuries and without which, the injuries would not have occurred. Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560, (1961). More specifically, appellant was required to show that the failure to install bed rails was the cause in fact of his injuries; and if bed rails had been installed he would not have sustained the injuries. Consequently, proximate cause in this case must be determined by those facts shown to be in existence at the very time that appellant fell.

Before considering the facts surrounding the accident, it is important to keep in mind that the undisputed evidence in the record shows: (1) that patients who are physically able to do so can, and frequently do, crawl over bed rails, especially when they are not rational, and (2) that appellant was

physically able to crawl over bed rails if he should try to do so.

Immediately prior to the appellant's fall from the bed, his daughter, Mrs. Betty Zednick, was the only attendant in the room with him. Concerning the events leading up to the fall, she testified as follows:

"Q Now, at some time then on later in the evening, your father roused himself and addressed a statement to you concerning his intention to get up and go to the bath room? Is that correct?

"A He said he had to urinate.

"Q You of course handed him a bed pan, did you not?

"A Urinal.

"Q Urinal?

"A Yes.

"Q And when you did that he became angry with you, did he not?

"A Yes.

"Q He wasn't irrational but angry; is that right?

"A He was angry.

"Q Of course, you know the difference between being angry and being irrational do you not?

"A Yes.

"Q And you described it in your deposition and you described it again here this morning that your father was angry with you and told you to get the hell out of the room that he had to go to the bathroom?

"A That's right.

"Q He was conscious and knew what he was saying then, was he not?

"A He know he had to use the urinal.

"Q And there wasn't any equivocation when he told you to get out of the room, was there? He didn't mumble that con-versation; he intended for you to leave, did he not?

"A Yes.

"Q And you left, didn't you?

"A I did.

" * * *

"Q You left knowing that he said he had to go to the bath room?

"A Yes.

"Q And you left knowing that he was trying to get up to go to the bathroom and not to use the bed pan, or urinal, did you not?

"A He was not trying to get up when I left the room."

Mrs. Zednick further testified that she left the room to go down the hall to get her mother. She also testified that after she went down the hall and got her mother, they returned to the room and as they arrived just outside the room, they heard something hit and they went in and saw the appellant lying across the floor. His feet were closer to the bed than his head. Neither his wife nor daughter nor any other witness saw him fall. Appellant testified that he remembered nothing of the accident.

Lacking the testimony of an eye witness to the accident, the record does not show how appellant fell or what unknown factors may have combined to cause his fall. The manner in which appellant fell, i. e., whether he rolled from the bed, stood up in bed and fell; whether he got off the bed, stood up, walked away and then fell, or fell while attempting to get out of bed or while attempting to sit up and use the urinal, is not disclosed by the record. Nor does the evidence exclude the possibility that the appellant left the bed by going over the end of it where bed rails are not ordinarily installed. The mere fact that appellant fell is not evidence that the fall was proximately caused by the ac-

tions or omissions of the defendants-appellees or either of them. Houston Nat. Bank v. Adair, 146 Tex. 367, 207 S.W.2d 374, (1948). As the record is presented to us on this appeal, appellant had the burden of establishing that "but for" the failure to install bed rails or the failure to have them available, he would not have fallen, Baumler v. Hazelwood, supra; Young v. Massey, 128 Tex. 638, 101 S.W.2d 809 (1937). Under the record in this case it would be futile to ask the jury if the failure to install bed rails was the proximate cause of the accident when the record reveals no cause. The jury would have no facts with which to evaluate the fall and determine if bed rails would have prevented it. All that the jury could determine from the facts was that the fall occurred. From this fact alone, the jury could do no more than speculate or conjecture as to what may have been its proximate cause. It was stated in the case of Talley v. Bass-Jones Lumber Co., 173 S. W.2d 276 (Tex.Civ.App.) 1943, writ refused, want of merit:

" 'Upon the other hand, the causal connection between defendant's act or omission and the injury must not be left a matter of surmise or conjecture, and cannot be established by evidence which is merely consistent with or indicates a mere possibility or probability thereof, as be evidence which merely shows two or more possible causes of the injury, for not all of which defendant is responsible; or which leaves it a matter of speculation or conjecture as between such causes; or which is equally consistent with the theory that the injury resulted from a cause for which defendant is not responsible; or which is equally balanced or permits of equally reasonable inferences or equally permissible conclusions as between a cause or causes for which defendant is responsible and a cause or causes for which he is not responsible; or where the injury may with equal fairness or probability or likelihood or as reasonably or with greater probability be attributed to a cause which will excuse defendant as to a cause which will subject him to liability.' * * * "

The Supreme Court of this state in the case of Bowles v. Bourdon, supra, said:

" * * * All it shows is that what respondent did was not a probable but only a possible cause of the contracture; that it was only one of several things that could have caused the injuries complained of. Therefore, this cause is ruled by the language of Circuit Judge Taft, in Ewing et al. v. Goode, supra [cc., 78 F. 442], 'when the burden of proof is on the plaintiff to show that the injury was negligently caused by defendant, it is not enough to show the injury, together with the expert opinion that it might have occurred from negligence and many other causes. Such evidence has no tendency to show that negligence did cause the injury.'

"And if the plaintiff would rest upon inferences rather than upon direct evidence, he meets the same rule. 'The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility. Verdicts must rest upon reasonable certainty of proof. Where the proof discloses that a given result may have occurred by reason of more than one proximate cause, and the jury can do no more than guess or speculate as to which was, in fact, the efficient cause, the submission of such choice to the jury has been consistently condemned by this court and by other courts.' Ramberg v. Morgan, 209 Iowa 474, 218 N.W. 492, 498." See also Western Telephone Corporation of Texas v. McCann, 128 Tex. 582, 99 S.W.2d 895 (1937).

█ Proximate cause cannot be established by mere conjecture or guess, nor may it be presumed. It must be proved. Leatherwood Drilling Company v. TXL Oil Corporation, 379 S.W.2d 693 (Tex.Civ.App.) 1964, writ of error refused, n. r. e.

We have carefully reviewed all of the evidence as set forth in the Statement of Facts in a light most favorable to appellant and have been unable to find any evidence of probative force that the negligence, if any, of the appellees or either of them in failing to install bed rails or failing to have bed rails available, was a cause, in fact, of the injuries complained of by the appellant. Causation not having been established, an instructed verdict was proper.

For the reasons stated, the judgment of the trial court is affirmed.