Magdalena CHASCO, Individually and as
Next Friend of Graciela Chasco,
et al., Appellants,

v.

PROVIDENCE MEMORIAL HOSPITAL
and Dr. W. L. Pierce, Appellees.

No. 6206.

Court of Civil Appeals of Texas,
El Paso.

Jan. 12, 1972.

Saul Pullman, Eastland, for appellant.

C. J. Eden, Breckenridge, for appellee.

Burnett & Childs, Odessa, Jesus B. Ochoa, Jr., El Paso, for appellants.

Hardie, Grambling, Sims & Galatzan, Allen R. Grambling, Malcolm Harris, Kemp, Smith, White, Duncan & Hammond, William Duncan, El Paso, for appellees.

## OPINION

RAMSEY, Chief Justice.

This is a medical malpractice case. Magdalena Chasco, the Plaintiff-Appellant, Individually and as Next Friend of her minor children, brought suit against Providence Memorial Hospital and Dr. W. L. Pierce, Defendants-Appellees, for the death of her husband, Domingo Garcia Chasco. The jury returned a partial verdict sufficient to absolve the hospital of negligence

but incomplete as to the Doctor in failing to answer any issue as to negligence, proximate cause, or damages. The trial Court granted the hospital's Motion for Judgment and subsequently reconsidered the Doctor's Motion for Instructed Verdict and entered judgment for both Defendants after the jury was discharged. We affirm.

 Plaintiff assigns four points of error. The first complains of wording of a special issue inquiring as to whether or not the hospital failed to notify Dr. Pierce that the deceased had "bumped his head and had a small cut above his left eyebrow". The Plaintiff had requested the issue to read had "struck his head" instead of the other quoted words used. We overrule this point for two reasons. First, Rule 279, Texas Rules of Civil Procedure, requires the Court to submit the controlling issues presented by the written pleadings and the evidence. The portion of the wording of the issue complained of is taken verbatim from the Plaintiff's pleadings wherein the negligent act is alleged. The hospital records reveal similar wording in the nurses notes and the testimony introduced is of the same import. Thus, the issue submitted conforms to the Plaintiff's pleading and quotes the specific act of negligence relied on by the complaining party and is proper under the pleadings and evidence. McDonald, Texas Civil Practice, Vol. 3, Sec. 12.07, p. 290. Second, a Motion for New Trial was required as a prerequisite to appeal insofar as the Hospital was concerned. Under Rules 320, 321, and 322, T.R.C.P., each ground of error must be specified and clearly identified in order to be considered. The assignment of error is too general and thus insufficient to apprise the trial Court of the error of which complaint is made. Baker v. Sturgeon, 361 S.W.2d 610 (Tex.Civ.App., Texarkana, 1962).

 Plaintiff's second point of error complains of the refusal of the trial Court to submit a requested issue on the failure of the hospital to "properly restrain" the deceased. Here again, as in the first point, the assigned error is not properly preserved in accordance with Rules 320, 321, and 322, T.R.C.P. Nevertheless, the Plaintiff is not entitled to such a submission since proximate cause can never be presumed. It must be proven. Bowen v. East Texas Hospital Foundation, Tex.Civ. App., 400 S.W.2d 843 (Ref. n.r.e.). The mere fact that the deceased may have fallen, which is impossible to determine from the record, yet there is no evidence to support any proposition that even if we assume he did fall, that such was proximately caused by any act or omission of the Hospital. We therefore overrule this point of error.

 Point of error number four complains of the trial Court's granting the Doctor's motion for instructed verdict. A motion for instructed verdict may be made after a jury has been discharged because of inability to agree upon a verdict. McDonald, Texas Civil Procedures, Vol. 3, Sec. 11.26, p. 228. In reviewing the action of the trial Court, it becomes incumbent upon this Court to view the evidence in the light most favorable to the Plaintiff, disregarding all evidence and inferences therefrom favorable to the Defendant. Hart v. Van Zandt, 399 S.W.2d 791 (Tex.Sup.Ct. 1965).

Plaintiff alleges three acts of negligence pertaining to the Doctor. One is a general allegation in failing to reasonably, adequately and competently supervise the attention to the deceased. The other two allege negligent acts consisting of failing to take a complete physical history and failure to call a specialist at an earlier time. Only the two specific alleged acts were submitted to the jury. No request was made for submission of the general allegation so our concern will be limited to the two specific alleged acts. The jury found in its partial verdict that the Doctor failed to take a complete and accurate history but did not answer whether this was negli-

gence or proximate cause. The other issue relating to the calling of a specialist was not answered.

The Doctor, a general practitioner, saw the deceased at the emergency room of the Hospital after office hours. Neither the deceased nor any member of his family had been the Doctor's patient. The deceased appeared nervous and shaky. The Doctor noted in the records that according to the deceased's wife, he had been having hallucinations that day. The conclusion the Doctor reached as a result of the examination was that the deceased was suffering from "alcoholism DT's", and was hospitalized under this diagnosis. After admission, the Doctor noted that the deceased had been drinking heavily for some time and not eating. Plaintiff denies that she told the Doctor this. The deceased was then admitted to the hospital. Medication was prescribed by the Doctor which included sedation. Early the following morning, the deceased was medicated for restlessness and was having hallucinations. The deceased was moving furniture in the room and had apparently bumped his head on something and there was a small cut above his left eyebrow. Additional medication was given and by 8:30 A.M. when the Doctor saw him, he was in a comatose condition. Hospital notes through the morning revealed that he was not eating, was sleeping, not responding to verbal commands, and would respond only to painful stimuli. The attending nurse called the Doctor about 3:00 P.M. of that day about the deceased's failure to take his diet and the Doctor ordered additional intravenous feeding. Later in the same afternoon, nurses notations were made indicating that his pulse was slow and irregular and that his respiration was described as short, rapid at times and becoming slower. The Doctor was notified twice about the deceased's condition by 7:00 P.M. At that time, the Doctor saw him and contacted a neurosurgeon and by 8:20 P.M., both Doctors were in attendance. Mr. Chasco died just after midnight. Mr. Chasco lived approximately 29 hours after his admission to the hospital.

An autopsy was performed. The results revealed a hematoma that had been present more than 48 hours and in the opinion of the Pathologist, existed prior to the deceased's admission to the hospital. The bleeding was not sudden but slow and for which trauma would not be required. The Pathologist attached no significance to the bump over the deceased's left eyebrow. Examination of the liver exhibited liver damage commonly found in people who drink heavily. The Pathologist testified that tremor, hallucinations, malnutrition, anemia and the condition of the liver are consistent with alcoholism, and are not suggestive of subdural hematoma. The general import of the medical testimony is that the treatment prescribed and the deceased's reaction thereto were consistent with a sedated patient's recovery from alcoholism.

The deceased's family testified that he was not an excessive drinker. This was substantiated by family friends and coworkers. Negligence and causation in medical malpractice is based on the same principles as any other negligence action. Neither is presumed but must be proved. The subsequent autopsy on the deceased revealed that he was suffering from disabilities not revealed in the history taken by the Doctor upon which the diagnosis was based. Thus, in reviewing the record, it is understandable that the jury found that the Doctor failed to take a complete and accurate history. The jury was unable to determine whether or not his failure was negligence. Neither did it answer whether the Doctor's failure to call a specialist at an earlier time was negligence. A careful review of the record fails to reveal any testimony whereby his diagnosis and treatment could be evaluated. No standard of care is established.

Plaintiff contends, and correctly so, that the necessary medical testimony can be supplied by the Doctor himself. Humphreys v. Roberson, 125 Tex. 558, 83 S.W. 2d 311 (Com.App.1935, opinion adopted). Such an admission is not present here. In Snow v. Bond, 438 S.W.2d 549 (Tex.Sup. Ct.1969), the Supreme Court states:

"The question of what a reasonable and prudent doctor would have done under the same or similar circumstances must also be determined by the trier of fact after being advised concerning the medical standards of practice and treatment in the particular case."

Plaintiff also contends that the delay in calling a specialist was negligence and proximate cause. The duty placed on a general practitioner has been prescribed by the Supreme Court in King v. Flamm, Tex., 442 S.W.2d 679 (1969) as follows:

"The general practitioner is not required to consult with a specialist, however, on every conceivable complication that may arise in his practice. . . . . There is a duty to seek consultation with, or refer the patient to, a specialist when he knows, or in the exercise of reasonable care should know that the services of a specialist are indicated. Here, as in other cases of alleged medical malpractice, the defendant is to be judged on the basis of the standards and practices of his profession. If there is expert testimony fairly supporting the conclusion that a reasonably careful and prudent general practitioner would have sought consultation under the same or similar circumstances, the trier of fact is entitled to find that the defendant was negligent in failing to do so."

The record here is simply lacking in any evidence prescribing the standard of practice in the community upon which a finding of negligence or proximate cause could be predicated. Therefore, we do not find it necessary to pass on Plaintiff's point of error number three since neither the Court's definition of negligence nor the Plaintiff's requested definition, when considered with the evidence and testimony introduced, would form any basis for a finding of negligence or proximate cause. Thus, in the absence of testimony showing the standard of care required, the wording of the definition becomes moot.

For these reasons, Plaintiff's third and fourth points of error are overruled and the judgment of the trial Court is affirmed.