Mike QUALLS, Appellant,

v.

GRAHAM GENERAL HOSPITAL,
Appellee.

No. 17710.

Court of Civil Appeals of Texas,
Fort Worth.

April 9, 1976.

Nagle, Taylor & Ewing and Al Taylor, Houston, for appellant.

Jennings, Montgomery & Dies, Graham and Whitten, Sprain, Price, Wagner & Edwards and Marvin S. Sprain, Abilene, for appellee.

## OPINION

BREWSTER, Justice.

This suit for damages for personal injuries was filed by Mike Qualls, plaintiff, against Graham General Hospital and Dr. Frank Harmon, defendants. Plaintiff contended that the defendants committed acts of negligence during the course of an operation to reduce and plate a fracture to his leg which negligence proximately caused a non-union of the broken tibia in his leg and that this non-union resulted in injuries and damages to plaintiff. Before trial the plaintiff's suit against Dr. Harmon was settled and plaintiff's suit against the doctor was dismissed. When that settlement was made the defendant, Hospital, then filed a cross-action against Dr. Harmon for contribution and indemnity on the grounds that he was a joint tort feasor.

A jury trial ended with the trial court rendering judgment to the effect that plaintiff take nothing by his suit against the Hospital and that the Hospital take nothing by virtue of its plea over and cross-action against Dr. Frank Harmon.

This appeal is brought by the plaintiff, Qualls, from that decree.

We affirm.

Plaintiff's first point of error was that the trial court erred in overruling plaintiff's motion for new trial because the negative answer of the jury to Special Issue No. 1 is against the great and overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

In plaintiff's second point of error he makes the identical contention as to the jury's answer to Special Issue No. 7.

We overrule plaintiff's first and second points of error.

The duty of a Court of Civil Appeals in passing on the question of whether or not a jury finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust is set out in the case of *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951) as follows: "It is not infrequently described as a question of 'sufficiency' of the evidence. See *Hall Music Co. v. Robinson*, 117 Tex. 261, 1 S.W.2d 857; *Wisdom v. Smith*, 146 Tex. 420, 209 S.W.2d 164, 166. The question requires the Court of Civil Appeals, in the exercise of its peculiar powers under the constitution and Texas Rules of Civil Procedure Nos. 451, 453, and 455, to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly

unjust—this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict. See cases cited, supra. The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict."

In reaching the decision that we have as to plaintiff's first two points of error we have considered and weighed all of the evidence in the case.

The following facts were undisputed: on November 14, 1971, plaintiff was riding a bareback rodeo horse when the horse crashed into a fence; plaintiff's right leg was between the horse and the fence and his leg was broken below the knee; the tibia and fibula bones in that leg were both broken; he was taken to the Graham General Hospital where Dr. Frank Harmon performed an open reduction operation to set the bones; he made an incision, fitted the bones back together and used a small metal plate and screws to hold the bone fragments in place; the plate was made of a metal known as vitallium and so was one of the 5 screws used to screw the metal onto the broken bones; the other 4 screws used for that purpose were made of stainless steel; when this operation was scheduled the hospital brought an orthopedic rack or tent into the operating room which contained plates and screws, some being made of vitallium and some of stainless steel; these screws were only separated according to length and were not separated according to metals; when the surgeon would drill a hole in the bone he would measure the hole and call for a screw of the desired length; the nurse would then hand him such a screw inserted into a screw driver ready to be screwed into the bone; thereafter the fibula bone knitted but the tibia did not; four different operations were necessary in treating the leg and trying to get the tibia to knit; the failure of the tibia to knit ended up causing plaintiff much pain, some disability and shortness of the right leg and other damages.

Special Issue No. 1 was: "Do you find from a preponderance of the evidence that the defendant hospital was negligent in having vitallium and stainless steel screws and plates mixed in the screw tent at the time of the operation in question?" The jury answered: "No."

Issue No. 7 inquired: "Do you find from a preponderance of the evidence that the implanting of mixed metals in plaintiff's leg was a proximate cause of injury and damage to the plaintiff?" The jury answered No. 7 "No."

The jury found in answer to Issue No. 3 that at the time of the operation Dr. Harmon's failure to observe and detect that different types of metal screws were being used to affix the plate to the fracture site was negligence and found in answer to Issue No. 4 that such negligence was not a proximate cause of the damages to plaintiff's leg.

Patsy Parker, a nurse at defendant's hospital, testified: vitallium and stainless steel screws look different; the screw tent is provided for the doctor by the hospital; it had both stainless steel and vitallium bars and screws on it for the operating doctor; vitallium screws have a "V" implanted on the head; generally the operating doctor is captain of the ship (the boss) and nurses are instructed to do as he asks; some doctors bring their own bars and screws; the screw tent is set up about three feet from the doctor in the operating room; the vitallium and stainless steel screws are not separated according to metal, but are according to size; and often doctors go to the screw tent while operating and pick what they wish from it.

Dr. Harmon testified: a fracture of the kind involved is inherently unstable; he installed in plaintiff's leg the vitallium plate, one vitallium screw and four stainless steel screws; he was aware of a possible danger of mixing the metals; he did not notice that the screws used were of two different metals; he was unaware that the metal appliances on the tray were mixed; you can readily tell the difference in the two metals by their color; he released plaintiff on March 13, 1972, at which time he was having a normal recovery; a delay

in union of a fracture, such as plaintiff had, can be caused by many factors other than a mixture of metals; soft tissue injuries and injury to the blood vessel supply to the bone can cause the delay in union; there will be a high percent of delayed unions and non-unions where the tibia is fractured in this area just in the natural course of things; there is a great difference of opinion as to whether mixing metals causes electrolysis.

The hospital administrator, C. G. Young, testified: the nurses and hospital staff knew of a possible danger in mixing the metals, but since the two types of metal are so easily identified they felt there was no need to separate them; and it is up to the surgeon to call for the proper appliance.

Dr. Richard Lambert, plaintiff's medical expert testified: he practices in San Diego, California; he is an orthopedic surgeon; his opinions here are based on hospital records, office records and notes of Dr. Harmon and Dr. Donnell, x-rays and the plate and screws involved; he did not treat plaintiff and saw him for the first time on the evening before the trial; the doctor usually calls for what he wants during an operation; the following can cause or contribute to cause a delay or non-union of a fracture such as plaintiff had: (1) infection; (2) severity of the injury itself; (3) circulatory impairment; (4) soft tissue injury; (5) segmentation of the bone; (6) distraction (bone ends being pulled away); (7) excess motion at the fracture; (8) badly fitting cast; (9) electrolysis from mixture of metals; (10) age of patients, and (11) for unknown reasons sometimes such fractures are delayed or fail to heal; in his opinion the non-union of plaintiff's tibia was caused from electrolysis due to the mixing of the metals.

Dr. Ralph Donnell testified: he started treating plaintiff on April 18, 1972; he is an orthopedic surgeon; he operated on April 21, 1972, and removed the metal plate and screws; there was some discolored scar tissue at the fracture site; on October 18, 1972, he again operated and removed one inch of the fibula to try to get the tibia back together; vitallium plates and screws and stainless steel plates and screws are both acceptable to the medical profession; the hospital generally plays no part in the surgeon's decision as to which type metal to use in an operation of this type; the plate in plaintiff's leg had vitallium printed on it and the vitallium screw had a "V" stamped on the head of the screw; when he removed the plate he found one screw had been broken; his opinion is that it was broken by fatigue or strain and not due to electrolysis from mixing the metals; when both bones are broken the fibula usually heals first and this occurred in plaintiff's case; his opinion is that when the fibula healed first it held apart and prevented proper healing of the tibia; in his opinion electrolysis from mixing the metals did not cause plaintiff's troubles; in his opinion he would have had to perform all the operations he did perform on plaintiff regardless of the type of metals that were used by Dr. Harmon in reducing the fracture; the mixed metal was not the cause of the delay in the healing; plaintiff's problem with his leg was due to the failure of the fractured tibia to heal properly and that condition was not caused by a mixture of the metals; in his opinion none of the disability plaintiff had in his leg was caused by the mixture of the metals.

In the case of *O'Neill v. Craig*, 493 S.W.2d 898 (Tex.Civ.App., Corpus Christi, 1973, ref., n. r. e.) the same questions involved here were raised. The court, at page 902 of the opinion, stated the following: "The jury is the sole judge of the facts and the circumstances proven. They may draw reasonable inferences and deductions from the evidence adduced before them. Insofar as there may be conflicts in the testimony of the witnesses, it is clear that the jury in the exercise of its prerogative, determines the credibility of the witnesses and the weight to be given their testimony. With all of the applicable principles of law in mind and after balancing the substantial evidence that supports the verdict against such evidence as is against the verdict, we do not find that the great weight and preponderance of the evidence requires a reversal of this case. *Gulf, Colorado & Santa Fe Railway Company v. Deen*, 158 Tex. 466, 312 S.W.2d 933 (1958); *Couch v. Hale*, 404

S.W.2d 920 (Tex.Civ.App.—Corpus Christi 1966)."

As stated, the jury found in answer to Issue No. 3 that Dr. Harmon was negligent in failing to observe that different type metals were being used in repairing plaintiff's leg. The jury in answer to Issue No. 1 found that a preponderance of the evidence did not show the hospital to be negligent in mixing the metals in the screw tent.

■ The jury was justified in believing from the evidence that the doctor was in charge of the operation and that the hospital was not in charge of it; that the decision was the doctor's to determine what metals were to be used in repairing plaintiff's leg; and that he was negligent in using two different metals in reducing plaintiff's fracture. The jury apparently concluded that it was not the hospital's duty to tell the doctor which metals to use in the operation and that the hospital had performed its duty by furnishing to the doctor two metals that were medically approved for use in reducing fractures and which metals could readily be told apart merely by looking at them. The hospital placed the two metals there before the doctor for his use as he saw fit in performing the operation.

After considering all of the evidence in the case we find and hold that the jury's answer to Special Issue No. 1 was not against the great weight and preponderance of the evidence.

■ We recognize that before the plaintiff would be entitled to have the judgment appealed from reversed because of the contentions urged in his first and second points of error that he would have to be correct in the contentions he urges under both points. This is true because even if the overwhelming weight and preponderance of the evidence was to the effect that the hospital was negligent in having plates and screws made of both stainless steel and vitallium mixed in the hospital tent, plaintiff still could not win this case unless the implanting of the mixed metals in plaintiff's leg was a proximate cause of plaintiff's dam-

ages. The jury found against the plaintiff on both issues. Findings on both issues, Nos. 1 and 7, would have to be in plaintiff's favor in order for him to be entitled to a judgment.

In his second point of error he contends that the jury's finding against him on the proximate cause issue (No. 7) was also so against the great weight and preponderance of the evidence as to be unjust.

■ Whether or not the implanting of mixed metals in plaintiff's leg was a proximate cause of his injuries, as is inquired about in Issue No. 7, is a matter that the average layman would know nothing about. The answer to it would have to be determined from expert testimony. *Henderson v. Mason*, 386 S.W.2d 879 (Tex.Civ.App., El Paso, 1964, no writ hist.).

Three witnesses in the trial fit into this category. One was Dr. Richard Lambert from San Diego, California, who saw the plaintiff for the first time on the evening before the trial. He testified that there are 11 different things that could cause or contribute to cause a delayed or non-union of a fracture such as the plaintiff had and that in his opinion the non-union in plaintiff's case was caused by electrolysis due to mixture of the metals.

Dr. Frank Harmon reduced the fracture and implanted the mixed metals on November 14, 1971, and treated plaintiff from then until March 13, 1972. He testified that: a delay in union of bones can be caused by many factors; there is a great difference of opinion as to whether mixing the metals will cause electrolysis; with this particular type of break even in instances of the best possible treatment 22% to 35% of such cases will end in bad results; soft tissue injury is the main cause of problems such as plaintiff had.

Dr. Ralph Donnell, an orthopedic surgeon, started treating plaintiff on April 18, 1972; he performed several operations in treating the leg; in his opinion plaintiff's trouble was caused by the fact the fibula healed first and held the ends of the tibia apart and thus prevented proper healing of the

tibia; electrolysis did not cause plaintiff's damages; the mixed metals did not cause the delay in healing and did not cause any of plaintiff's disability.

The opinions of Dr. Donnell and Dr. Harmon on the proximate cause question conflicted with the opinion of the California doctor, Dr. Lambert, and the jury chose to believe Dr. Harmon and Dr. Donnell.

■ Generally where testimony on an issue is in conflict the jury's function is to pass on the credibility of the witnesses and to determine the facts.

■ Opinions of medical experts, even when uncontradicted, are not conclusive and only present fact issues for the determination of the fact finder. *Bond v. Snow*, 422 S.W.2d 842 (Tex.Civ.App., Eastland, 1967, affirmed in 438 S.W.2d 549). And in the case of *Houston General Insurance Company v. Pegues*, 514 S.W.2d 492 (Tex. Civ.App., Texarkana, 1974, ref., n. r. e.) the court said at page 496:

"In judging the accuracy of a medical witness' testimony and the weight to be given it, the jury may consider the type and thoroughness of the examination made by him and the degree of attention given by him to the matter, as well as the witness' skill and experience and his manner and attitude in testifying. . . . If the opinions of the expert do not comport with the jurors' ideas of sound logic, they may act accordingly."

■ We hold that the jury's answer to Issue No. 7 is not so against the great weight and preponderance of the evidence as to be unjust.

Plaintiff's third point of error was that the trial court erred in overruling his motion for new trial because there was material jury misconduct of such a nature as to clearly indicate that the verdict was not based on a preponderance of the evidence, but on matters outside the record, untrue, wholly irrelevant and highly prejudicial to plaintiff's right to a fair trial.

Rule 327, T.R.C.P. provides: "Where the ground of the motion (for new trial) is misconduct of the jury . . . the court shall hear evidence thereof . . . in open court, and may grant a new trial if such misconduct proved . . . be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury- probably resulted to the complaining party."

Although the point of error does not specify any of the claimed misconduct, plaintiff in his brief argues that it consisted of the following: (1) the juror, Young, during deliberations bent a piece of paper into the shape of a tent in order to demonstrate to another juror the shape of a screw tent and, (2) the jurors apparently agreed all around that Issue No. 7 should be answered "No" unless the mixing of the metals was "due to the negligence of Graham General Hospital."

■ Our review of the evidence presented at the hearing of the motion for new trial convinces us that Mr. Young, by bending the paper into the shape of a tent, in no way prejudiced plaintiff because the evidence in the trial had clearly demonstrated the things that Young indicated to the jury by bending the paper.

Jurors Creswell and Mrs. Bowden testified in substance that Mrs. Wise, the forelady on the jury, and the juror Young, both stated during deliberations that in considering Issue No. 7 that the jury should add into it the words "due to the negligence of Graham General Hospital". The jurors, Young and Mrs. Wise, testified that no such thing occurred and that there was no agreement between the jurors that Issue No. 7 should be answered "No" unless the mixing of the metals was due to the negligence of the hospital.

■ Where the evidence is conflicting on an issue of jury misconduct the trial court's decision thereon will be taken as final on appeal, unless a clear abuse of discretion appears. *Murphy v. Davis*, 305 S.W.2d 218 (Tex.Civ.App., Beaumont, 1957, no writ hist.); *Texas Employers' Insurance Ass'n v. Logsdon*, 278 S.W.2d 893 (Tex.Civ.App., San

Antonio, 1955, ref., n. r. e.); *United States Fidelity & Guaranty Co. v. Turner*, 390 S.W.2d 302 (Tex.Civ.App., Texarkana, 1965, ref., n. r. e.), and *Goates v. Ingram*, 386 S.W.2d 654 (Tex.Civ.App., Eastland, 1965, ref., n. r. e.). We hold that there was no abuse of discretion here.

■ Testimony was offered during the trial of the case that: (1) if a mistake was made in the operating room the blame is on the doctor and not on the nurse; (2) the defendant hospital is supported by the taxpayers of the City of Graham; (3) the taxpayers had already paid plaintiff's medical bills; and that (4) plaintiff has settled with Dr. Harmon.

There was evidence introduced at the hearing of the motion for new trial that at some time during the jury deliberations the matters just referred to were mentioned by one or more jurors.

As stated, there was evidence in the trial tending to establish each of those matters and some of it was introduced by the plaintiff. When a juror mentioned the fact that the plaintiff had settled with the doctor, the forelady, Mrs. Wise, promptly told the juror that the amount of that settlement had nothing to do with what the jury had to decide and that they should not discuss that.

We hold that the record in this case does not reflect any material jury misconduct that probably resulted in injury to the plaintiff.

The judgment is affirmed.