Gladys HILZENDAGER, Appellant,

v.

METHODIST HOSPITAL, Appellee.

No. 17450.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 28, 1980.

W. Jiles Roberts, Houston, for appellant.

Fulbright & Jaworski, Robert J. Swift, Houston, for appellee.

PEDEN, WALLACE and WARREN, JJ.

PEDEN, Justice.

Gladys Hilzendager appeals from the granting of a directed verdict in her suit against Methodist Hospital for injuries sustained while a patient there. Grounds stated in the motion were that 1) there was no evidence to establish a standard of care for treatment or to establish that the hospital had violated any such standard, 2) there was no evidence that the hospital had failed to care for Mrs. Hilzendager properly, 3) there was no evidence that she had suffered any injuries proximately caused by any negligence of the hospital, and 4) the suit was barred by the statute of limitations. Mrs. Hilzendager asserts that there was evidence raising the issues in question and that the statute of limitations did not begin to run on her suit until after settlement of her claim for worker's compensation benefits filed as a result of the injury which originally caused her hospitalization in Methodist. We affirm.

Mrs. Hilzendager was employed as a nurse's aide at Methodist Hospital when she injured her back on July 4, 1972, in the course and scope of her employment. She filed a claim for worker's compensation benefits, and on July 27, 1972, while undergoing treatment for that injury as a patient at the same hospital, she fell from her bed and injured her back again. The protective side rails on her bed were not raised when she fell.

The worker's compensation claim was settled on March 26, 1974, when a final judgment was entered in a district court. Mrs. Hilzendager filed this action against Methodist Hospital on November 14, 1974.

The appellant's only point of error is that the trial court erred in granting a motion for directed verdict.

The first two grounds in the hospital's motion for directed verdict were that Mrs. Hilzendager had failed to establish a standard of care to which the hospital was required to adhere and had failed to show that any such standard was violated or that she was not properly cared for.

It is the duty of a hospital to provide for the care of its patients, and the degree of care required is such reasonable attention for their safety as their mental and physical condition, if known, may require. *Harris v. Harris County Hospital District*, 557 S.W.2d 353 (Tex.Civ.App.1977, no writ); 40 Am.Jur.2d 869, Hospitals and Asylums § 26.

Mrs. Hilzendager had the burden of establishing that bed rails would ordinarily be provided by a hospital under similar circumstances and of proving that Methodist breached that standard. *Wilson v. Scott*, 412 S.W.2d 299 (Tex.1967); *Hart v. Van Zandt*, 399 S.W.2d 791 (Tex.1965); *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779 (1949).

In that regard, Mrs. Hilzendager offered only "the rule pertaining to side rails" taken from Methodist's in-house procedural manual. Its only provisions that possibly apply are that side rails are to be used for "e. Confused and irrational patients," for "f. Heavily sedated patients," and for "i. Any patient needing this safety device."

The plaintiff presented no evidence that Methodist's in-house rules reflect the community standard of hospital care. The hospital points out that a particular institution might maintain a higher standard of care in its operations than the prevailing community standard. To apply such a higher standard would be contrary to the established rule which applies the community standard of care and would also discourage individuals and institutions involved in health care from aspiring to maintain exceptional standards of conduct. See *Foley v. Bishop Clarkson Memorial Hospital*, 185 Neb. 89, 173 N.W.2d 881 (1970). Nevertheless, we believe that the standard of negligent failure to raise side rails is not one requiring special training, insight, or proof. We think the jury was entitled to conclude, without testimony of an expert, that the hospital's rule pertaining to side rails is in keeping with the conduct of a person of ordinary prudence under like circumstances, just as we think it would be unnecessary to offer proof that a hospital should not make its floors slippery.

There is little evidence concerning the fall. The plaintiff testified that it occurred between 8:00 and 9:00 p. m., that at around 5:30 or 6:00 p. m. she had been given Valium, and that after 8:00 she was given two Phenaphens Number 3. She said that she was feeling the effects of the medication "slightly" at the time she fell and that she was dizzy. She said she reached to turn on a light over her bed while talking to her daughter on a telephone. She needed to see something she wanted to tell her daughter about, so she reached for the light switch but was too close to the side of the bed, so she fell. It happened at a time when she was regularly getting up and going to the bathroom whenever she wished. We are not told how far she had to reach for the light switch, either horizontally or vertically, and there is also nothing to indicate the height or location of bed rails when they are raised. The only evidence regarding bed rails is that they were not raised on Mrs. Hilzendager's bed before her fall but that some were raised afterwards. The plaintiff's daughter testified that over the telephone her mother kept repeating herself and said she was hurting "real bad."

There is no evidence that before Mrs. Hilzendager fell she was "heavily sedated," no evidence as to the meaning of that term, and none as to the effect of the medication she had taken. Also, there is no evidence that any of the hospital's agents, servants, or employees knew or should have known that the plaintiff was "confused or irrational" or that she was one "needing this safety device."

There may well exist circumstances under which a lay person is qualified to conclude that another person is under heavy sedation, but we cannot say the jury in our case was entitled to reach that conclusion under this evidence. Further, there was no evidence that the medications taken by the plaintiff would cause her to be heavily sedated or would cause hospital personnel to reasonably expect her to be.

We hold that Mrs. Hilzendager did not raise a fact issue as to whether the hospital was negligent in failing to raise the bed rails.

We think it even more clear that (as stated in the hospital's third ground for directed verdict) there was no evidence that any injury to Mrs. Hilzendager was proximately caused by any negligence of the hospital.

It is not enough for the plaintiff to show that she was injured in the fall. In order to recover, she is, of course, required to show that her injury was caused by the hospital's negligence. See *Hart v. Van Zandt,* supra; *Qualls v. Graham General Hospital,* 535 S.W.2d 932 (Tex.Civ.App.1976, no writ); *Chasco v. Providence Memorial Hospital,* 476 S.W.2d 385 (Tex.Civ.App.1972, no writ).

There is no evidence that the failure to raise the bed rails was the cause of the fall or that if bed rails had been raised she would not have fallen. Proximate cause must be proven and may not be merely presumed. *Bowen v. East Texas Hospital Foundation,* 400 S.W.2d 843 (Tex.Civ.App. 1966, writ ref. n. r. e.) Mrs. Hilzendager presented no evidence from which the jury could have determined that any negligence of the hospital was the cause in fact of her fall. Methodist's point was well taken.

In view of our rulings on the other matters raised by the hospital in support of its motion for directed verdict, we need not consider its ground based on limitations.

Affirmed.